A. Jesse **GOLDSTEIN**, Plaintiff,

v.

**BANKERS COMMERCIAL CORPORA-TION**, Defendant and interpleading plaintiff,

**UNITED STATES** of America, The State Tax Commission of the State of N. Y., and American Bowling & Billiard Corp., interpleaded defendants.

United States District Court
S. D. New York.
April 12, 1957.

Alex M. Hamburg, New York City, for plaintiff.

Paul W. Williams, U. S. Atty., New York City, for defendant United States. Robert J. Ward, Asst U. S. Atty., New York City, of counsel.

RYAN, District Judge.

This suit comes to us for trial upon stipulated facts.

American Bowling & Billiard Corp. is a New York corporation. The certificate of incorporation was filed with the Secretary of State of New York on April 22, 1937. The corporate name then was "Continental Bowling & Billiard Corp."; it was changed to "American Bowling & Billiard Corp." by certificate filed with the Secretary of State on June 24, 1937. The certificate of incorporation recited that "the office of the corporation is to be located in the City of New York, County of New York, State of New York," a provision which was never changed or amended. From 1942 to November 1, 1951 the corporation maintained its principal place for the transaction of its business at 200 Madison Avenue, New York City; as of November 1, 1951 the corporation maintained its principal place for the transaction of business at Mifflinburg, Union County, Pa. It was engaged in the sale of bowling and billiard equipment some of which was sold upon a time payment basis.

Bankers Commercial Corporation is a New York corporation with offices at 270 Madison Avenue, New York.

"Bankers" purchased from "American Bowling" some of its conditional sales contracts for the amount of the unpaid contract balance at the time of purchase, but only 85% of this amount was paid by "Bankers" to "American Bowling" at the time of the purchase; the remaining 15% was retained by "Bankers" as a reserve pending payment by the customers of "American Bowling." Bankers held $10,957.52 reserves at the time of the filing of this suit; this fund less a charge of $550 or a net amount of $10,407.72 has since been deposited by Bankers in this court.

The ultimate issue in this suit is who is entitled to receive this fund. The claimants are the United States, A. Jesse Goldstein and the State Tax Commission of the State of New York.

The claim of the United States is predicated upon unpaid taxes due the United States from American Bowling. There is presented no issue as to the amount due for these taxes. From 1941 to 1952 American Bowling in the operation of its business withheld monies from wages earned by its employees for federal taxes and failed to remit these deductions. The following federal tax assessments against American Bowling were made followed by due demand upon it and assessments lists received by the District Director of Internal Revenue at the dates specified below, to wit:

| Nature of Tax | Taxable Period | | | Date List Rec'd | Amount |
|---|---|---|---|---|---|
| FICA | 2d | quarter | 1949 | 9/19/49 | $ 501.69 |
| FICA | 3d | @ " | 1949 | 12/2/49 | 574.38 |
| Withhold. | 3d | " | 1949 | 11/30/49 | 5,249.04 |
| Withhold. | 4th | " | 1949 | 3/29/50 | 3,220.78 |
| Withhold. | 1st | " | 1951 | 5/29/51 | 2,198.51 |
| Withhold. | 2d | " | 1951 | 9/12/51 | 3,264.57 |
| Withhold. | 3d | " | 1951 | 12/14/51 | 1,438.88 |
| FUTA | Annual | | 1951 | 4/22/52 | 254.57 |
| | | | | | $16,702.42 |

None of these tax assessments listed have been paid.

The District Director of Internal Revenue for Scranton, Pa. District on January 14, 1952 filed with the Prothonotary of Union County, Lewisburg, Pa. a notice of federal tax lien for the sum of $9,545.-89, dated November 19, 1951, reciting the name of taxpayer as "American Bowling & Billiard Corp." and residence or place of business as "Mifflnburg, Penna." for the following taxes:

| Nature of Tax | Taxable Period | Date List Rec'd | Amount |
|---|---|---|---|
| Withheld | 9/30/49 | 12/ 2/49 | $ 574.38 |
| Withheld | 6/30/49 | 9/19/49 | 501.69 |
| Withheld | 9/30/49 | 11/30/49 | 5,249.04 |
| Withheld | 12/30/49 | 3/29/50 | 3,220.78 |
| | | Total | $9,545.89 |

The same District Director filed on April 10, 1952 with the same Prothonotary a further notice of Federal Tax Lien dated April 4, 1952 with identical recitals concerning taxpayer and residence for the following tax:

| Nature of Tax | Tax. Period | Date List Rec'd | Amount |
|---|---|---|---|
| Withheld | 12/31/51 | 2/27/52 | $ 892.65 |

Again, on May 6, the same Director filed in the Prothonotary's office a Notice of Federal Tax Lien for the sum of $6,901.-06 dated April 30, 1952, again reciting the name and address of taxpayer as in his prior notices for the following taxes:

| Nature of Tax | Tax. Period | Date List Rec'd | Amount |
|---|---|---|---|
| Withheld | 3/31/51 | 5/29/51 | $2,198.51 |
| Withheld | 6/30/51 | 9/12/51 | 1,438.88 |
| Withheld | 9/30/51 | 12/14/51 | 3,264.57 |
| | | | $6,901.96 |

And again on July 14, 1953 this Director filed in the same office a Notice of Federal Tax Lien for the sum of $254.57 dated June 29, 1953 with the identical recitals as in prior notices as to taxpayer and its residence for an item of Federal Unemployment Tax payable for year 1951 on assessment list received on April 22, 1952.

The District Director for Upper Manhattan, N. Y., on September 9, 1952 filed a Notice of Tax Lien for $20,144.76 with the Register of the City of New York, County of New York. This notice was dated September 3, 1952 and states the name of taxpayer as "American Bowling & Billiard Corp., Residence of place of business c/o Director of Internal Revenue, Upper Manhattan, Dist., N. Y.". The District Director on September 9, 1952 served upon Bankers Commercial Corporation a levy totaling $20,251.34 for taxes due. This levy dated September 3, 1952 states this sum is due to the United States from "American Bowling & Billiard Corp., c/o Director of Internal Revenue, Upper Manhattan, District of New York." This levy was accompanied with nine separate Warrants for Distraint—8 of them for the taxes listed above with penalty and accrued interest thereon, and the ninth for a wage-excise tax for the fourth quarter of 1951, in the amount of $892.65 plus a 5% penalty of $44.63, totaling $937.28. The total included in the notice of tax liens is slightly less than the total which appears in the levy because the interest in the notice was computed to September 1, 1952, rather than September 3, 1952. However, the taxes included are the same.

While these steps were being taken to secure and collect federal taxes due, the State Tax Commission of the State of New York on October 3, 1952, recovered a judgment for $900.28 against "American Bowling" for unpaid corporate franchise taxes and on July 17, 1953 served upon Bankers a third party subpoena in supplementary proceedings.

The plaintiff, A. Jesse Goldstein, also on February 13, 1953 recovered a judgment for $25,160.11 against "American Bowling" in the Supreme Court of this State, County of New York for services rendered during 1952. Thereafter, and on February 27, 1953, the plaintiff served upon "Bankers" a third party subpoena in supplementary proceedings and on the same day issued execution on his judgment to the Sheriff of the City of New York, who on the same day also served a copy of the execution on "Bankers" which refused to pay. It is on this judgment and the subsequent proceedings to enforce its collection that the plaintiff's claim is based.

Thereafter followed the proceedings which brought the claims to this Court. Goldstein, on January 14, 1951, commenced a suit in the Supreme Court of the State of New York, County of New York against "Bankers" upon his judgment of $25,160.11 of February 13, 1953 against "American Bowling". "Bankers" on November 16, 1954 by answer admitted its indebtedness to "American Bowling" in the sum of $10,957.72, and on November 18, 1954, "Bankers" as interpleading plaintiff petitioned to bring in the United States, the State Tax Commission and "American Bowling" as interpleaded defendants. The United States on December 6, 1954 removed the suit to this Court. "American Bowling" has defaulted, the State Tax Commission has appeared but not answered. And there the matter stands for our decision as to whether the Tax liens of the Government are superior to those of the plaintiff. We hold that they are.

It is the plaintiff's contention that the Government tax liens are defective and invalid because of its failure to comply with Sections 240 and 241 of the N. Y. Lien Law, McK.Consol.Laws, c. 33.

■ The tax liens arose on the date copies of the assessment lists were received by the Collector (now called the District Director) of Internal Revenue and upon the condition that demand was made on the taxpayer for payment (Sec. 3670, I.R.C.1939, 26 U.S.C.A. § 3670; United States v. Scovil, 1955, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271). To make these liens valid as against any judgment creditor it was required that they be recorded "in the office in which the filing of such notice is authorized by the law of the State or Territory in which the property subject to the lien is situated * * *." Sec. 3672, I.R.C.1939, 26 U.S.C.A. § 3672; United States v. Scovil, supra.

Here the property sought to be subjected to the liens was located in the County, City and State of New York and Section 240 of the N. Y. Lien Law designates the office for the filing of tax liens on personal property and Section 241 provides for the manner of filing.

■ Notices of Tax Liens were filed in the Office of the City Register in the County of New York on September 9, 1952. This was the County in which "American Bowling" by its certificate of incorporation was required to maintain its principal office (Gerhauser Bros. v. Estopco Inc., Sup.1937, 293 N.Y.Supp. 544, N. Y. Stock Corporation Law, § 35), and was also the County in which the property in dispute was located. This was in compliance with the provisions of Section 240(2) of the Lien Law which provides that such "notices of liens upon personal property for taxes payable to the United States * * * shall be filed in the county within the city of New York * * * where the owner, if a resident of the state, resides at the time the lien arises, and if not a resident in the county within the city of New York * * * where the property is at such time."

"American Bowling" was a New York corporation; it was a resident of the State of New York. The certificate of in-

corporation of "American Bowling" provided for the location of the office of the corporation. in the County of New York, in the City of New York. The Notices of Federal Tax Lien were therefore properly filed by the District Director of Upper Manhattan in New York in the office of the Register of the City and County of New York. But even if it were assumed for the sake of argument that "American Bowling" was not a resident of the State at the time of the filing of the Notices but was a resident of Mifflinburg (to which place it had transferred its principal place of business after November 1, 1951), the notices were properly filed under the Lien Law because the property against which the lien was asserted—i. e. the fund in suit and the office of Bankers which held the fund— were located in this County.

■ Plaintiff also contends that there were errors and misstatements in the Notice of Tax Liens filed on September 9, 1952 which rendered them invalid because of the statutory requirements of Sec. 241 of the Lien Law. This law reads:

> "Files, indexes and entries
> "The officer maintaining each office specified in section two hundred forty shall procure, at the expense of the county, town or city, a file to be styled and labeled 'federal tax lien notices', and an index book or card index system to be styled and labeled 'federal tax lien index.' When a notice of any such tax lien is presented to him for filing, he shall file it in numerical order in the file, and shall enter it alphabetically in the federal tax lien index. The entry shall show the name and residence of the taxpayer named in the notice, the collector's serial number of the notice, the date, hour and minute of filing and the amount of tax and penalty imposed."

It is conceded that two errors appear on the notice of Tax Liens. On one of the nine liens appearing on the notice,

the date on which the lien for taxes for FUTA for the year 1951 in the sum of $269.84 arose, that is the date on which the assessment list was received is stated, 4/22/42. This is incorrect and should have been stated as 4/22/52. But it is not "fatal error" making the entire notice defective and invalid.

A tax for the year 1951 could not have been assessed in the year 1942; the error was an obvious one and one would in all probability read the date as "52". At most, if fatal, it would only affect that particular lien for $269.84 leaving 8 other valid liens totaling far in excess of the fund of $10,407.72 which the United States is seeking to recover.

The second error as to which there can be no dispute is one of arithmetic. The total on the notice is listed as $20,144.76 whereas it should have been $20,240.79— the actual sum of the 9 liens listed. At most this could only operate to reduce the total of the effective liens from $20,-240.79 to $20,144.76—a total still in excess by far of the fund sought by the Government.

■ The plaintiff finally argues that the listing of the taxpayer's residence as "c/o Director of Internal Revenue, Upper Manhattan District, New York" was erroneous and "fatal" error because it did not comply with Sec. 241 of the Lien Law.

The accurate recital and statement of the true corporate name of the debtor taxpayer removed all doubt or question as to the identity of the defaulting taxpayer. No one searching or examining the tax lien index in the office of the Register could have been misled or deceived by the address given. Under these circumstances it should not be held that the failure to state more accurately the defacto address, residence or place of business of this defaulting taxpayer invalidated the notice which was filed under the correct name of the corporation, in the county where it resided at the time the liens arose (except with respect to the last 2) and in the county where the

property to which the lien attached was located. There could be only one corporation with that corporate name in the State.

The purpose of the filing is to give constructive notice and where there is such notice a minor defect in filing will be overlooked. Richter's Loan Co. v. United States, 5 Cir., 235 F.2d 753.

United States v. Ruby Luggage Corp., D.C.S.D.N.Y.1954, 142 F.Supp. 701, decided by this court is readily distinguishable. There inaccurate statement of the corporate name resulted in its being listed under a wrong index. One examining the correct index would not have found the notice of the tax lien. Here, the entry would appear in the proper index for all to see and readily identify.

I conclude that the United States duly filed an adequate notice of tax lien in the proper office on September 9, 1952 and fully complied with the requirements of the Lien Law.

The plaintiff's further contention that the Government was guilty of laches by its failure and delay in enforcing the tax liens and consequently forfeited its right to the fund in suit is without merit or substance. United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283.

I conclude:

1. that the tax liens of the United States are prior to and superior to the claim of the plaintiff and the State Tax Commission of the State of New York;

2. that the fund of $10,407.72 now on deposit with the Clerk of this Court should be paid over to the United States;

3. that judgment should be entered accordingly in favor of the United States with taxable costs and disbursements against the plaintiff.

Let judgment be submitted on notice.