The CITY OF SHERIDAN, WYOMING, Plaintiff,

v.

MONTANA–DAKOTA UTILITIES COMPANY, Defendant.

Civ. No. 4043.

United States District Court
D. Wyoming.
Jan. 3, 1958.

E. E. Lonabaugh, Sheridan, Wyo., for plaintiff.

William D. Redle, Sheridan, Wyo., Edward T. Lazear (Loomis, Lazear & Wilson), Cheyenne, Wyo., and Earl H. A. Isensee, Minneapolis, Minn., for defendant.

KERR, District Judge.

This is an action for declaratory judgment instituted in the state court and removed to this court under the provisions of Title 28 U.S.C. Section 1332.

For the sake of convenience and brevity the City of Sheridan will be referred to as "city"; the Montana-Dakota Utilities Company, a corporation, will be referred to as "Utilities Company".

Through this action the city seeks to retreat from an ordinance it passed June 21, 1955. The facts are not in dispute.

The Utilities Company is licensed as a foreign corporation in the state of Wyoming and holds the exclusive right to supply electricity and gas to the city of Sheridan as a public utility. The Utilities Company and its predecessors commenced the furnishing of the aforesaid services subsequent to the passage of Ordinance 288 on August 21, 1911. This ordinance gave to the Utilities Company and its predecessors a fifty year franchise. At the time of the passage of Ordinance 944, constituting the subject of this controversy, the original franchise had approximately six years to run before expiring by its own terms.

At a regular meeting of the City Council held on May 16, 1955, the Utilities Company presented to the City Ordinance No. 944. The ordinance was read for the first time May 16, 1955, and for the second and third times May 23, 1955 and June 20, 1955, respectively. On June 21, 1955, the ordinance was amended by deleting the last sentence in Section XI, the deleted portion being as follows:

"If it is necessary to change standards subsequent to their original installation, the municipality agrees to pay all costs and expenses necessary in making such change."

It is appropriate to obtain a clear understanding of the issues involved that the material portions of the ordinance as approved by the City Council be set forth:

"*Ordinance No. 944.*

\*    \*    \*    \*    \*

"Section 2. There is hereby granted to Montana-Dakota Utilities Co., a corporation, Grantee, its successors and assigns, subject to the limitations herein stated, the right and franchise to occupy and use the streets, alleys, and public grounds of the municipality as now, or hereafter constituted, for the purpose of constructing, maintaining, and operating, within, upon, in and under the same, an electric distribution system

for transmitting and distributing electric energy for all public and private uses.

"Section 3.  Grantee shall maintain an efficient distribution system for furnishing electric energy for public and private use during twenty-four (24) hours of each day at such reasonable rates, and under such regulations as may be approved by the Public Service Commission of the State of Wyoming.

"Section 4.  This franchise shall not be exclusive and shall not be construed to prevent the Municipality from granting to any other party the right to use the streets, alleys, and public grounds of the Municipality for like purposes.

"Section 5.  The Municipality reserves any right it may have, under its police power, or otherwise, to control or regulate the use of said streets, alleys, and public grounds by Grantee.

"Section 6.  Grantee shall indemnify and save and hold the Municipality harmless from any loss or damage due to the construction, installation, and maintenance of its distribution system, and its use of the streets, alleys, and public grounds of the Municipality.

"Section 7.  Grantee shall have the right to assign this franchise to any party, or corporation, but all obligations of Grantee hereunder shall be binding upon its successors and assigns.

"Section 8.  Within thirty (30) days after passage and final approval of this Ordinance, Grantee shall file with the Clerk or auditor of the municipality, its written acceptance of this franchise.

"Section 9.  This franchise shall continue and remain in full force and effect for a period of twenty-five (25) years from the date upon which this ordinance shall become effective as provided by law.

"Section 10.  As a further consideration for the rights, privileges and franchise hereby granted, said Grantee agrees to pay to said Municipality on or before the last Wednesday in January of each year one per cent (1%) of the gross earnings derived by said Grantee from the sale of electric energy for light, heat and power within the corporate limits of said Municipality during each preceding calendar year, or fraction thereof, in which said Grantee is furnishing electric energy within said Municipality; said Grantee to make a statement under oath at the time of making said payment hereinbefore provided setting forth its gross earnings during said preceding calendar year, or fraction thereof, and the amount due said Municipality, which statement shall be filed with the City Clerk of said Municipality. The Municipality, through its duly authorized representatives, may examine the records of said Grantee for the purpose of verifying the accuracy of said sworn statement once each year, provided such examination is made within thirty (30) days from the date of filing such sworn statement with the City Clerk.

"Section 11.  As a further consideration for the rights, privileges and franchise hereby granted, such Grantee agrees to install and maintain at its own expense, a new white way lighting system on Main Street extending between Burkitt Street and 17th Street, said lighting system to consist of approximately ninety-two (92) steel standards thirty (30) feet in height equipped with 20000 lumen mercury vapor lighting units.

"Section 12.  All Ordinances and parts of ordinances in conflict herewith are hereby repealed from and after the date of acceptance of this ordinance by the Grantee as provided in Section 8. above.

"Passed, Approved and Adopted this *21st* day of *June,* 1955."

On January 1, 1956, a new city administration took over the affairs of the city and on October 27, 1956, this suit was instituted declaring the above ordinance void from its inception.

It is first contended by the city that the ordinance was not published in the manner provided by law. In this respect the city places reliance upon Section 29–527, Wyoming Compiled Statutes, 1945, from which I quote:

* * * *"No franchise* or right to occupy or use the streets, highways, bridges, or public places in any city organized or acting under this Act (§§ 29–501—29–528), or for interurban or street railways, gas or water works, *electric light* or power plant, *heating plants,* telegraph or telephone systems, or other public service utilities within said city, shall be granted, *renewed,* amended or *extended except by ordinance* and by following the procedure as follows: *Every such ordinance shall be complete in the form in which it is finally passed, and remain on file with the city clerk for public inspection* for at least ten (10) days before the final passage thereof; such ordinance *shall also be published at least once in all the papers of the city or town at least one week before the final passage thereof."* (Emphasis supplied.)

The city takes the position that the ordinance should have been published in its entirety.

The parties agree the minutes of the May 15, 1955, meeting and the title of the ordinance were published in the Sheridan Press, said publication appearing May 20, 1955. In this publication the title of the ordinance so published is as follows:

"An ordinance granting to Montana-Dakota Utilities Company, a corporation, its successors and assigns, the franchise and right to construct, maintain and operate, within and upon, in and under the streets, alleys and public grounds of the city of Sheridan, Sheridan County, Wyoming, an electric distribution system for transmitting and distributing electric energy for all public and private uses."

The city in its brief has overlooked Section 29–102, Wyoming Compiled Statutes, 1945, as amended, which designates the manner in which the minutes shall be published. This section provides:

"The board of trustees, council, or commission, of the several incorporated cities and towns of Wyoming, whether incorporated under the general incorporation law, or under special charter, shall designate a legal newspaper and cause a minute of the proceedings of all regular and special meetings held by said board, council, or commission, to be made and published, *and shall publish the title of all ordinances passed by said* trustees, *council* or commission, in some newspaper in said town or city, and if there be no newspaper published in said town or city, said proceedings or ordinances need not be published in a newspaper." (Emphasis supplied.)

It will be observed that the provisions of the above section were fully met by the city. I deem it unnecessary to determine whether a proposed ordinance shall be published more than once. Section 29–527, supra, requires the ordinance be published. Section 29–102, as amended, makes it mandatory to publish the title. These sections should be read together. The title as published gives the substance of the entire ordinance.

The purpose of requiring the ordinance to be published is to prevent the selling or giving away of franchises without due consideration of the public interest. In the case at bar not only was the title of the ordinance published as required by the statute but as disclosed by exhibits, wide publicity was given to the proposed ordinance by both the press and radio. The exhibits disclose that only two persons protested against the passage of the ordinance. Considering the population of Sheridan the protest was negli-

gible. Under the circumstances the action of the Council can hardly be termed "a Star Chamber Session".

Following the enactment of Ordinance 944 the city and Utilities Company entered into a municipal street lighting agreement, from which I quote:

"This agreement, made and entered into this 25th day of July, A.D. 1955, by and between Montana-Dakato Utilities Co., a Delaware Corporation, its successors and assigns, party of the first part, hereinafter referred to as the 'Company' and the City of Sheridan, Sheridan County, Wyoming, party of the second part, hereinafter referred to as the 'Municipality'

"Witnesseth: That in consideration of the mutual promises and covenants herein stipulated to be kept and performed by the respective parties to this agreement, it is mutually understood and agreed as follows, to-wit:

"1. During the term of this agreement, the Municipality shall use electric energy which may be required by the Municipality for such purpose. For all electric energy delivered by the Company to the Municipality for such purpose, the Municipality shall pay the Company therefor according to the rate schedule hereto attached, subject, at all times, to the authority of the Public Service Commission of the State wherein the Municipality is located and to an annual minimum bill of $6,000.00.

"2. It is expected that the Municipality will burn a uniform number of lamps throughout the year, but nothing in this contract shall be construed to prevent the Municipality from increasing or decreasing the number or size of lamps to suit its requirements, provided that the Municipality shall purchase from the Company all electric energy it shall require for all street lighting service and shall meet the minimum bill provisions. All extensions to the present street lighting system shall be mutually agreed upon before such extensions are made. The expense of any change in location of lighting standards, whether wood or steel poles, shall be borne by the city.

"3. The schedule of rates attached hereto is applicable only to all night, every night services, with a minimum of 4,000 hours annually.

"4. The Company shall render monthly bills to the Municipality each month, for all electric energy consumed during the previous month, under the terms hereof, and the Municipality shall pay therefor within thirty days thereafter.

"5. This agreement shall become effective as of the date hereof, and remain in full force and effect for a period of ten (10) years from said date, and thereafter from year to year until terminated by either party upon written notice to the other given at least 90 days prior to the next ensuing contract anniversary date.

"In witness whereof, the parties hereto have caused these presents to be duly executed by their duly authorized officers, and have caused their corporate seals to be hereunto affixed as of the day and year first above written.

\*　　\*　　\*　　\*　　\*　　\*

"Company owned street lighting system for street lighting purposes including streets, alleys and other public grounds. Service will be required all night every night in the year with a minimum service of 4,000 hours annually, and must be covered by written contract.

"Rate:

"*Energy Charge*

when metered at point of delivery to the Municipality's lighting system, 1.5¢ per KWH.

"When delivered to the Municipality's lighting system unmetered —1.8¢ per KWH. Measured by

the total rated capacity of the lamps and ballast in use.

"When service is not metered, the bill shall be computed on an annual basis, and one-twelfth shall be payable each month.

"Street series lamp rataings in lumens shall be converted to watts on the basis of the published ratings currently issued by the General Electric Company and the Westinghouse Electric Corporation.

*"Equipment Charge*

$.50 per pole per month for bracket system poles.

$2.25 per pole per month for ornamental systems.

"Tax Adjustment:

"Plus the applicable proportionate part of any impost, assessment or charge imposed or levied by any Governmental authority as a result of laws or ordinances enacted after this date which is assessed or levied on the basis of revenue for electric energy or service sold, and/or the volume of energy generated and sold.

"Minimum Bill:

"As specified in contract.

"Prompt payment Discount:

"None

"Special Terms and Conditions:

"The Company will replace all burned out and broken lamps at its own expense.

"Issued July 8, 1955 Effective July 15, 1955."

After the franchise was granted and the street lighting agreement entered into the Utilities Company made substantial investments, as follows: $33,670 in a White Way system; $52,600 in a new electric transmission line leading from its plant at Acme to Sheridan, and transformers; $7,800 in new distribution facilities, or a total investment of approximately $94,000. Most of this work had been started and completed

prior to the adoption of Resolution 2394, hereinafter referred to.

Acting upon the belief that Ordinance 944 was invalid the city passed on July 16, 1956, a resolution, from which I quote:

"Whereas, the City Council of the City of Sheridan did, on the 21st day of June, A.D.1955, pass Ordinance No. 944 of the City of Sheridan; and,

"Whereas, said Ordinance was not published as by Law provided; nor by the laws governing City and Towns as set forth in the Wyoming Compiled Statutes of 1945 and as amended by subsequent legislation; and,

"Whereas, the City Council deems it in the best interest of the citizens of the City of Sheridan to set aside as null and void said Ordinance No. 944; and,

"Whereas, said Ordinance has been null and void from and since its passage;

"Now, Therefore, Be It Resolved By The Mayor And Council Of The City Of Sheridan:

"That the Ordinance known as Ordinance No. 944 be and the same is hereby declared to be null and void and to have no force and effect from the date of its passage and that the City of Sheridan be not bound under the terms of said ordinance."

The above resolution was adopted by the city subsequent to the passage of Ordinance 958 approved March 12, 1956, which purported to ignore Ordinance No. 944 and to place a special tax upon the sale of electricity and gas at the rate of $30,000 per annum.

Singular as it may appear, the city continued to accept without objection through January 1, 1957, the one per cent (1%) of the gross earnings derived by the Utilities Company from the sale of electric energy for light, heat and power within the corporate limits of the city as provided in Section 10 of the Ordinance 944. So far as the record reveals the

city was continuing to operate under Ordinance 944 on the date of the trial of the cause. Again, as late as April 1, 1957, the city passed Ordinance 983, which gave the Utilities Company the right to lay cable for an underground lighting system between Burkitt and Dow streets in the City of Sheridan and the city, by said ordinance, agreed that in case of any maintenance and repair of the underground cable system the city would at its own expense remove and replace the covering over said cable; the Utilities Company was to maintain and repair the underground lighting system according to the best engineering standards. As I construe and interpret the above ordinance it is simply an enlargement upon Section 11 of Ordinance 944, which the city now contends is a nullity.

The above is a brief résumé of the undisputed facts as they appeared in the trial of this cause.

■ The Utilities Company has interposed the common defense of estoppel. I recognize that as a general rule the doctrine of estoppel does not apply to municipal corporations and I am not unmindful of the fact that the courts of many states have absolutely refused to apply it to such corporations. I am not prepared, however, to announce an unalterable rule which would inevitably result in perpetuating wrong and injustice in a case like this. Courts of equity are established for the administration of justice in those cases where substantial justice can not be administered under the express rule of law.

■ The people in their collective capacity, acting through a municipal corporation, ought to observe the same rules and standards of fair dealings that are expected of a private citizen.

■ It is held by some courts that where substantial expenditures have been made on the strength of an ordinance or franchise, the municipality may be estopped to deny its validity if not clearly ultra vires. The action taken by the council in passing Ordinance 944 could not be treated as ultra vires. Their action was clearly within their power as authorized by the legislature. See City of Hudson v. Board of Education, 158 Misc. 583, 287 N.Y.S. 620, 624.

A text writer states the rule to be as follows:

"The doctrine of estoppel has often been applied when the question of the validity of an ordinance has been raised. Thus where the ordinance is published in pamphlet form by public authority with the other ordinances of the municipality, a city cannot question its validity, on the ground that it was not validly adopted. Its publication estops the city from so doing. 2 McQuillin, Municipal Corporations, 2d Ed., Sec. 843."

The city places emphasis on the case of Tobin v. Town Council of Town of City of Sundance, Wyoming, 45 Wyo. 219, 17 P.2d 666, 84 A.L.R. 902. In this case a street improvement contract was let in violation of the competitive bidding statute. The court held the contract void but refused to allow the city to recover back from the contractor payment made under the void contract. The court said in 45 Wyo. at page 253, 17 P.2d at page 678:

"Under these authorities and the facts of the instant case, we think it clear that no recovery of the money paid out to the plaintiff by the town council should be permitted. To affirm the right to such a recovery would, as pertinently said in the case of Frederick v. Douglas County, supra [96 Wis. 411, 71 N.W. 798], be to allow a court of equity to 'become an engine of oppression, rather than an instrument of justice.'"

I do not deem it necessary to refer to the many decided cases from other jurisdictions. Suffice it to say each case must stand on its own facts.

■ From what I have said it follows that the city is estopped from questioning the validity of Ordinance 944 and the prayer of the complaint must be denied; Ordinance 944 is held to be valid; the municipal street lighting contract dated

July 25, 1955, executed pursuant to Ordinance 944 is a valid existing agreement.

Counsel for defendant will prepare and submit findings of fact and conclusions of law in conformity with this memorandum within 15 days from the date of filing hereof, together with judgment, each party to pay its own costs, and the clerk will enter an order accordingly.