**Paul PIPOLA and Julia Pipola, Plaintiffs,**

v.

**Mae CHICCO, United States of America, and Yorkville Savings and Loan Association, Defendants.**

United States District Court
S. D. New York.

Jan. 5, 1959.

**230**

Axelrod & Axelrod, New York City, Herman S. Axelrod, and Maitland M. Axelrod, New York City, of counsel, for plaintiffs.

Arthur H. Christy, U. S. Atty. for Southern District of New York, New York City, William F. Suglia, Asst. U. S. Atty., New York City, of counsel, for defendant United States.

Krisel, Lessal & Dowling, New York City, Charles L. Kramer, New York City, of counsel, for defendant, Yorkville Savings and Loan Association.

WEINFELD, District Judge.

The plaintiffs, owners in fee of a one-story residence in the Bronx, New York, bring this action pursuant to 28 U.S.C. § 2410(a) against the United States of America, to quiet title—specifically to cancel a lien filed by the Government for unpaid taxes assessed against Mae Chicco, the plaintiffs' grantor. Also named as defendants are Mae Chicco and the Yorkville Savings and Loan Association, which holds a mortgage upon the premises. The Government, in addition to challenging the plaintiffs' right to maintain this action, counter-claims for foreclosure of its lien.

It is conceded that the tax lien was properly filed by the Government ten months before the plaintiffs acquired title. Upon delivery of the deed plaintiffs also received from Chicco an affidavit stating that the property was free and clear of all liens and encumbrances. Asserting that through inadvertence their title search failed to disclose the recorded Federal tax lien, and that they relied upon the affidavit of title in paying the purchase price, the plaintiffs now seek the cancellation of the lien upon the ground that the assessment upon which it is based is null and void.

The assessment of taxes against Chicco was made under the wagering provisions of the Internal Revenue Code.[1] The plaintiffs assert that, in fact, Chicco was not subject to the wagering tax, either as a principal or as one who received wagers on behalf of another, and hence the Commissioner was without jurisdiction to impose the tax.

The relevant facts as developed upon the trial follow: Chicco acquired the fee title to the premises on November 3, 1951. In August 1952 she executed a mortgage in the sum of $10,000 to the North New York Savings and Loan As-

---

1. 26 U.S.C. §§ 3285, 3290. This suit is governed by the 1939 Code but for comparable provisions in 1954 Code see 26 U.S.C. §§ 4401, 4402, 4404, 4411, 4421.

sociation, which was duly recorded. In August 1953, New York City police raided the premises, arresting Chicco, her paramour, Salvatore Speciale, and Alfred Fea. All three were charged with operating a policy bank in violation of New York State's Penal Law.[2] The men pleaded guilty but the charge against Chicco was dismissed. Thereafter, agents of the Internal Revenue Service conducted an investigation of the activities of Chicco, Speciale and Fea, and as a result the Commissioner made an assessment against all three as principals in a joint venture under the wagering provisions of the Internal Revenue Code. A pro-rated assessment, covering taxes and penalty, was entered against Chicco, in the sums of $14,287.44 on January 25, 1954, and $62.50 on February 5, 1954. Due notification of each assessment was sent to her and was followed by a second notice on April 15, 1954. On June 28, 1954, notice of the Federal tax lien was duly filed in the Office of the Register of the City of New York, County of Bronx, where Chicco's property was located.

On April 28, 1955, exactly ten months after the recording of the Federal tax lien, Chicco conveyed the property to the plaintiffs. Simultaneously the defendant, Yorkville Savings and Loan Association, loaned $12,000 to the plaintiffs, of which $8,573.49 was paid to the North New York Savings and Loan Association, in satisfaction of its then existing mortgage; and plaintiffs executed a mortgage to Yorkville to secure the $12,000 loan.[3]

The defendant, Chicco, never filed any protest against the assessment of the tax liability imposed by the Commissioner, nor has she up to this time paid the tax or any part of it. In fact, some months after she executed and delivered the deed to the plaintiffs, she disappeared and her present whereabouts is unknown.

2. N. Y. Penal Law § 974.

3. Yorkville, in its title search, also overlooked the previously filed Federal tax lien.

4. 26 U.S.C. § 6213 (1954 Code); 28 U.S.C. § 1346(a). See also Flora v. United

The basic question is whether under § 2410(a) of 28 U.S.C., the plaintiffs, as third parties to the tax proceedings against Chicco, their grantor, may challenge the tax assessment as illegally imposed by the Commissioner. Under existing law, a taxpayer who claims that an illegal tax has been imposed may either (1) contest the assessment in the Tax Court, or (2) pay the tax in full and thereafter sue to recover the amount alleged to have been illegally exacted.[4] However, the plaintiffs assert that these procedural and administrative remedies are applicable to and binding only upon taxpayers; that they do not apply to non-taxpayers. They contend however that § 2410(a) authorizes them, as non-taxpayers, to attack the validity of the assessment in order to remove the lien as a cloud upon their title. The plaintiffs also urge that they are entitled to equitable relief; that Congress, by permitting suits against the Government in actions to quiet title under § 2410(a), intended to permit a third party non-taxpayer to attack a tax assessment if circumstances warrant equitable relief. This, of course, gives a broad sweep to the section.

In the discussion of the problem, it is desirable to point out the difference between the assessment of a tax and the lien based upon the assessment. The assessment is an administrative determination that one is indebted to the Government for taxes—in effect, it is a judgment for taxes found due. As stated by the Supreme Court:

"The assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt."[5]

States, 1958, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165.

Bull v. United States, 1935, 295 U.S. 247, 260, 55 S.Ct. 695, 699, 79 L.Ed. 1421.

■■ The lien, on the other hand, is one of the means authorized by law to protect the Government's position as a creditor in its efforts to enforce collection of taxes.[6] Thus, if one neglects or refuses to pay any tax, all his property, real and personal, is subject to a lien in favor of the Government.[7] The Internal Revenue Code further provides that the "lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied." [8] With respect to these provisions the Supreme Court has stated:

"Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." [9]

■ Against this background we proceed to consider plaintiffs' contentions. Section 2410(a) simply provides a waiver of immunity by the United States in foreclosure actions or in suits to quiet title in instances where the Government has, or claims to have, a lien upon or other interest in property.

■ I am satisfied that its essential purpose is not to give, as plaintiffs contend, a third party nontaxpayer the right to attack collaterally an assessment against a taxpayer but rather to waive the Government's immunity from suit so as to permit a Court, either Federal or State, to determine the relative position of the Government lien on property as against other lienors, mortgagees or claimants and the order of disposition of the proceeds realized upon a judicial sale. Necessarily in such a proceeding, the determination of whether a lien is validly filed or is entitled to payment as against other liens, mortgages or encumbrances would come within the power of the Court. But the validity of a lien, depending upon compliance or noncompliance with statutory requirements, or the priority of a lien validly filed is quite a far cry from permitting a third party to attack the tax assessment upon which a properly filed lien is based.

■ I hold that the plaintiffs as purchasers subsequent to the date of the filing of the tax lien cannot challenge the assessment imposed by the Commissioner against their grantor. The tax laws afford adequate protection to third parties under the provision that the lien in favor of the Government for unpaid taxes "shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector." [10] Here, such notice was filed, and the plaintiffs or their representatives overlooked it. To allow their alleged inadvertence to serve as an excuse to challenge the Commissioner's tax determination would make a shambles of the provisions of the Act intended to enforce collection of taxes due from taxpayers. It would give to a third party greater rights than those accorded an alleged aggrieved taxpayer.

Indeed some rather odd results would follow were plaintiffs permitted to attack the assessment. Under § 2410(a), the Government may be sued in a District Court of the United States, or in any State Court. This suit was originally commenced in the State Court. The Government, exercising its right under § 2410(a), removed the action to this Court. However, assuming that the Government preferred not to exercise its right of removal, and that the action remained in the State Court, then, if plaintiffs are correct, the State Court would have the power to declare an assessment of Federal taxes illegal and void. Certainly nothing in the history

6. See Glass City Bank v. United States, 1945, 326 U.S. 265, 66 S.Ct. 108, 90 L. Ed. 56.

7. 26 U.S.C. § 3670 (1939 Code). Cf. 26 U.S.C. § 6321 (1954 Code).

8. 26 U.S.C. § 3671 (1939 Code). Cf. 26 U.S.C. § 6322 (1954 Code).

9. Glass City Bank v. United States, 1945, 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56.

10. 26 U.S.C. § 3672(a) (1939 Code). Cf. 26 U.S.C. § 6323(a) (1954 Code).

of § 2410(a) or of the Internal Revenue Code suggests any such purpose on the part of Congress.[11]

Plaintiffs' emphasis upon the phrase, "to quiet title", appearing in § 2410(a) is misplaced and overlooks its history and purpose. The statute was first enacted in 1931 to resolve the impasse in which mortgagees found themselves when seeking to foreclose on properties against which the Government had filed liens. As stated in one of the Committee reports,

> "[The mortgagee] cannot remove the lien as there is no method by which he may bring the United States in as one of the parties to the foreclosure proceeding. He is, therefore, in effect defeated of his own right to foreclose unless he is willing to pay off the Government lien, a debt for which he is in no way responsible and being a person to whom the Government would in no event look for its payment.

> The purpose of this bill is to provide a simple and just method of proceeding in such cases, which is fair to the holder of the prior lien on the real estate and which amply and fully protects the right of the Federal Government." [12]

The statute, as passed in 1931,[13] limited suits against the Government to actions brought for the foreclosure of mortgages or other liens. It did not permit the Government to be sued in any other action. In consequence, situations developed where persons who acquired title as a result of foreclosure sales where the Government lien had not been extinguished could not clear title. As a result, Congress, in 1942, in response to a recommendation by the then Attorney General, Robert H. Jackson, amended § 2410(a) by including the phrase, "to quiet title" [14] thereby authorizing suits against the Government in such actions as well as in foreclosure suits. The letter urging the amendment was incorporated in both the House and Senate Committee Reports.[15]

Plaintiffs have cast themselves in the role of injured parties, claiming they paid $18,000 for the premises without actual notice of the lien and in reliance upon the affidavit of their grantor that the premises were free and clear of all liens and encumbrances. But this claimed position of injury creates no equity in favor of plaintiffs. The Government's lien was properly filed. It was there for all the world to see. The very purpose of the lien-filing provision is to give notice to would-be purchasers of the Government's right to collect taxes due from the owners of the property. The plaintiffs blithely ignore the fact

11. Cf. Burnet v. Harmel, 1932, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199; Metropolitan Life Ins. Co. v. United States, 6 Cir., 107 F.2d 311, certiorari denied 1939, 310 U.S. 630, 60 S.Ct. 978, 84 L.Ed. 1400.

12. H.R.Rep. No. 95, 71st Cong., 2d Sess. 1–2 (1929). The same purpose is evident in S.Rep. No. 351, 71st Cong., 2d Sess. 2 (1930). See also the Conference Committee Report, H.R.Rep. No. 2722, 71st Cong., 3d Sess. (1931).

13. 46 Stat. 1528.

14. 56 Stat. 1026.

15. H.R.Rep. No. 1191, 77th Cong., 1st Sess. 2 (1941); S.Rep. No. 1646, 77th Cong., 2d Sess. 2 (1942):
"It should be observed * * * that under existing law there is no provision whereby the owner of real estate may

clear his title to such real estate of the cloud of a Government mortgage or lien. Welch v. Hamilton ([D.C.] S.D.Calif.), 33 F.2d 224, and United States v. Turner (C.C.A.8), 47 F.2d 86.

In many instances persons acting in good faith have purchased real estate without knowledge of the Government lien or in the belief that the lien had been extinguished. In other instances, mortgagees have foreclosed on property and have failed to join the United States. It appears that justice and fair dealing would require that a method be provided to clear real-estate titles of questionable or valueless Government liens. Accordingly, I suggest that the bill be amended by inserting the phrase 'to quiet title or' between the words 'matter' and 'for the foreclosure of' in line 4 of page 2 of the bill."

that the Government's lien was of record ten months before they acquired title to the property. The assumption must be that they had notice of it.[16]

To grant plaintiffs' claim is to disregard a prior lien validly filed by the Government, and to render nugatory § 3672(a) of 26 U.S.C., which provides:

> "Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—".

The end result would be to make the lien for taxes subordinate to interests acquired after its proper filing, if indeed not to eliminate it entirely. This would be a clear frustration of Congressional purpose.

Finally, apart from the foregoing, and assuming arguendo that plaintiffs could maintain a suit to attack the validity of the assessment, they have failed to sustain their claim that the assessment was made without any basis in fact. The investigation made by the Federal agents specially appointed to inquire into the activities of Chicco and her associates fully warranted the inference that they were engaged as joint venturers within the meaning of the wagering tax provisions.

All other contentions made by the plaintiffs have been fully considered and found to be without substance.

The Government is entitled to judgment dismissing the complaint upon the merits. It is also entitled to judgment upon its counter-claim for foreclosure of its lien, and upon the cross-claim against the Yorkville Savings and Loan Association, subject, however, to a superior lien to the extent of $8,573.49 in favor of the latter based upon a right of subrogation by reason of its payment of that sum to the North New York Savings and Loan Association in satisfaction of the unpaid balance due on the then existing mortgage, which was duly recorded prior to the tax lien filed by the Government.[17]

Submit appropriate decree upon notice in accordance with the foregoing and the Findings of Fact and Conclusions of Law filed herewith.

---

16. See, e. g., Grand Prairie State Bank v. United States, 5 Cir., 1953, 206 F.2d 217, 219.

17. The Thrift v. Michaelis, 1932, 259 N.Y. 302, 181 N.E. 580; Burgoon v. Lavezzo, 1937, 68 App.D.C. 20, 92 F.2d 726, 113 A.L.R. 944.