T. R. ELLIOTT, Virgie M. Elliott et al.,
Plaintiffs,

v.

SIOUX OIL COMPANY, a corporation,
et al., Defendants.

v.

YOUNGSTOWN SHEET AND TUBE
COMPANY, an Ohio corporation, and
United States of America, Intervenors.

BAY PETROLEUM CORPORATION, a
corporation, Plaintiff,

v.

L. S. CHISM et al., Defendants.

Civ. Nos. 4179, 4350.

United States District Court
D. Wyoming.
Dec. 9, 1960.

Knowles & Shaw, Denver, Colo., and
Loomis, Lazear & Wilson, Cheyenne,
Wyo., for intervenor Youngstown Sheet
and Tube Co.

John F. Raper, U. S. Atty., Cheyenne,
Wyo., for intervenor United States of
America.

KERR, District Judge.

The question here presented relates to the superiority of a federal tax lien over a private lien. The issue of priority of liens is before this Court by the motion by Youngstown Sheet and Tube Company to dismiss the objections of the United States to the Order on Pretrial Conference made and entered by this Court on July 22, 1960, awarding $19,-215.37 to Youngstown Sheet and Tube Company. The order directed also that the United States take nothing by virtue of its claim for taxes due from C. M. & W. Drilling Company in these interpleader actions, but that $1,013.30 be paid to the United States for its landowner's royalty which it interposed for the first time at the pretrial conference on June 3, 1960, in lieu of its claim for unpaid taxes.

Conflicting claims to the fund in the registry of the court are made by the United States Government and by Youngstown Sheet and Tube Company. The Government seeks to be awarded $2,924.33 based on its lien for taxes that accrued prior to January 1958 when the Court assumed control of the assets of the delinquent taxpayer, the C. M. & W. Drilling Company. It is the Government's contention that it is entitled to the funds held by Sioux Oil Company which were payable to C. M. & W. Drilling Company, which funds Sioux Oil Company paid into the registry of this court for proper disbursement.

Youngstown Sheet and Tube Company claims priority to the same funds by virtue of an instrument labeled "Assignment of Proceeds", which instrument it contends brings it within one of the privileged categories of Section 6323 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6323.

Both claimants rely on Sections 6321 to 6323, inclusive, of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 6321–6323 and they do not dispute the following facts:

Sioux Oil Company is a corporation organized under the laws of Colorado;

C. M. & W. Drilling Company, a South Dakota corporation, with its principal place of business in Denver, Colorado, owns and leases property in Wyoming, Colorado and New Mexico;

The tax assessment by the Director of Internal Revenue for the year 1956 was made on November 19, 1956;

Notice of the Federal tax lien was filed in Denver County, Colorado, on January 29, 1957;

C. M. & W. Drilling Company executed in Denver, Colorado, an "Assignment of Proceeds" to Black Hills Drilling Company on May 17, 1957;

Said Assignment of Proceeds was filed and recorded in Weston County, Wyoming, on May 25, 1957;

By letter dated May 31, 1957, Black Hills Drilling Company advised C. M. & W. Drilling Company that payment under the Assignment of Proceeds should be made to Continental Ensco Company, a division of Youngstown Sheet and Tube Company; and

Notice of the Federal tax lien was recorded in Weston County, Wyoming, on August 22, 1957.

For purposes of brevity, the assignor is referred to as "C. M. & W." and the rival claimant to the United States is referred to as "Youngstown".

The government's tax lien was created under Section 6321, which provides that a tax lien attaches "in favor of the United States upon all property and rights to property, whether real or personal, belonging" to the delinquent taxpayer. Such lien arises, under Section 6322, "at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of the lapse of time". Goldstein v. Bankers Commercial Corporation, D.C.N.Y.1957, 152 F.Supp. 856, affirmed 2 Cir., 257 F.2d 48; Beeghly v. Wilson, D.C.Iowa 1957, 152 F.Supp. 726. Prior rights, however, of any mortgagee, purchaser, pledgee or judgment creditor, are unaffected by the government tax lien. (Section 6323 of the Internal Revenue Code of 1954). This section provides that the tax lien is not valid against such creditors "until

notice thereof has been filed * * * in the office designated by the law of the State * * * in which the property subject to the lien is situated * * * ".

Applying the statutes to the chronology of events, the United States has a lien on the funds deposited with the court by Sioux Oil Company as of November 19, 1956. The superiority of that claim is contingent upon the status of Youngstown as a mortgagee, purchaser, pledgee or judgment creditor, and upon compliance with the filing requirements of Section 6323. Youngstown derives its rights by assignment from Black Hills Drilling Company, the named assignee in the Assignment of Proceeds.

Under the terms of the Assignment of Proceeds by the delinquent taxpayer, C. M. & W. declared that it owed Black Hills Drilling Company $25,252.05 for material and labor furnished, which amount the assignor "desires to pay out of proceeds due from Sioux Oil Company for crude oil purchased from the above-described leases, and from all other leases in which the undersigned (i. e. the assignor) owns an interest and from which the Sioux Oil Company purchases the oil produced therefrom". C. M. & W. thereupon made the following assignment:

"Now, Therefore, the undersigned, for and in consideration of the oil well drilled and the casing furnished as above stated by the Black Hills Drilling Company, Inc., for the use and benefit of the above-described leases and lands, does hereby assign, transfer and set over unto Black Hills Drilling Company, Inc., of Newcastle, Wyoming, the sum of Twenty-five Thousand Two Hundred Fifty-two Dollars and Five Cents ($25,252.05), payable from proceeds from the sale of crude oil from the above-described leases and lands, and all other leases and lands in which the undersigned owns an interest, and from which Sioux Oil Company purchases the crude oil produced therefrom, which proceeds may now be due, or which may here-after become due to the undersigned from Sioux Oil Company.

"In the event any part of the above stated Twenty-five Thousand Two Hundred Fifty-two Dollars and Five Cents ($25,252.05) is hereafter paid to said Black Hills Drilling Company by any interest owner in the above-described leases or lands, then, and in that event, upon written notice to that effect furnished to Sioux Oil Company, this Agreement shall be decreased and diminished by the total sum of such payments so made.

"The undersigned does hereby agree to indemnify and hold Sioux Oil Company harmless for making any payments hereunder and to defend said Sioux Oil Company against any claims or litigation which may arise by virtue of any payments so made."

The language of such instrument would profit from refinement and precision. Its infirmities, however, do not detract from its intent and purpose to give the creditor collateral security for the payment of the assignor's debt.

It is the position of the Government that Youngstown is not a purchaser within the meaning of Section 6323 for the reason that an assignee for past consideration is not a purchaser within the purview of the act and the definition of that term in Federal Tax Regulations, Section 301.6323–1. The Government stresses the applicability of the holding in the case of The United States v. Chapman, 10 Cir., 1960, 281 F.2d 862. In that case the assignee of a security for a loan was held to be a lienor and not a purchaser, and since the lien was inchoate and unperfected, it was not protected by Section 6323. Youngstown contends that it was either a purchaser or mortgagee.

■ The facts and the law lead me to the conclusion that the controversial instrument was executed as a security for the payment of a debt, and as such it constitutes a mortgage. 6 C.J.S. Assignments § 2(8), page 1049; Conard v. Atlantic Insurance Company, 1828, 1 Pet.

386, 447, 26 U.S. 386, 447, 7 L.Ed. 189. I am influenced, also, by the meaning of the terms "mortgagee, pledgee, purchaser, or judgment creditor" as set out in the Federal Tax Regulations, Sec. 301.-6323–1(a) (ii) which reads as follows:

"The determination whether a person is a mortgagee, pledgee, purchaser, or judgment creditor, entitled to the protection of Section 6323(a), shall be made by reference to the realities and the facts in a given case rather than to the technical form or terminology used to designate such person. Thus, a person who is in fact and in law a mortgagee, pledgee, or purchaser will be entitled as such to the protection of section 6323(a) even though such person is otherwise designated under the law of a State, such as the Uniform Commercial Code."

The subject of the mortgage thus executed is real property, or, more specifically, is an interest affecting real property. In the case of Stone v. Wright et al., 10 Cir., 1935, 75 F.2d 457, it was held that a lien on the proceeds from the sale of oil produced make it an instrument affecting the real estate. Holding that the instrument was within the recording requirements, the Court said at page 460:

"It was related to and affected real estate because the fund was to come from mineral extracted from the real estate, and it affected that real estate in many respects."

See, also, Continental Supply Company v. Marshall, 10 Cir., 1946, 152 F.2d 300, 307; Riverview State Bank v. Ernest, 10 Cir., 1952, 198 F.2d 876, 34 A.L.R.2d 892.

■■ Under the rule pronounced in United States v. R. F. Ball Construction Company, 1958, 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510, the lien must be perfected in order to be privileged by Section 6323. A claim based upon an unperfected instrument is subordinate to the government's tax liens. Arthur Company v. Chicago Paints, Inc., D.C.Minn. 1959, 175 F.Supp. 50, 53. The proceeds mortgaged by C. M. & W. were to be de-

rived from the sale of oil produced and sold from certain leases and lands in Weston County, Wyoming, and from "all other leases and lands" in which it owned an interest and from which Sioux Oil Company purchased the crude oil produced therefrom. Such property could be located in various counties and in various states. The property rights of the taxpayer and of the third party upon whom the government asserts its tax lien are determined by the state law wherein the property is located, or wherein said rights accrue.

It has been said that the claimant's lien interest must "[satisfy] the standards imposed by the decisions of the federal courts where the question of priority arises between a government tax lien and a private unperfected lien". First State Bank of Medford v. United States, D.C.Minn.1958, 166 F.Supp. 204, 209–210. It has also been intimated that a lien is not to be construed as perfected until it has been reduced to final judgment. United States v. White Bear Brewing Company, 1956, 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871. In the case of United States v. City of New Britain, 1954, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520, the standard by which a lien will be choate was expressed as follows:

" * * * The liens may also be perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established."

■ The universally accepted and time-honored rule, however, is that the question of the existence of property interests is solely a question of state law. It has been expressed by the Supreme Court in the case of Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 80, 626, 60 S.Ct. 424, 426, 84 L.Ed. 585, 1035, that "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed". In the case of Bensinger v. Davidson, D.C.Cal.1956, 147 F.Supp. 240, 245, the court said:

"The right of the United States to collect taxes is not subject to state law. * * * But state law may control on what it considers or creates as property." See also Commissioner of Internal Revenue v. Stern, 1958, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126; United States v. Bess, 1958, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed. 2d 1135; In re Kobiela, D.C.Neb.1957, 152 F.Supp. 489.

The fund in the registry of this court, to which both parties assert their claims, was channeled there by Sioux Oil Company as the purchase price for oil purchased from the so-called Texas-Elliott lease located in Weston County, Wyoming. Section 34–21, Wyoming Statutes 1957, provides that a recorded instrument affecting an interest in land "shall be notice to and take precedence of any subsequent purchaser or purchasers * * * ". When, therefore, the Assignment of Proceeds was recorded in Weston County, Wyoming, the mortgage of Youngstown was perfected and thereupon protected by Section 6323. This occurred on May 25, 1957, approximately three months prior to the filing in Weston County, Wyoming, of the notice of tax lien. By the terms of the Assignment of Proceeds and the prompt recording of that instrument in the county where the property was located, the assignor-taxpayer was divested of title and possession, and the lien was perfected. United States v. Gilbert Associates, 1952, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071.

The next question to be determined is whether or not the government's recorded notice on January 29, 1957, in Denver County, Colorado, takes precedence over the mortgage recorded in Weston County, Wyoming, on May 25, 1957.

■ The government attempts to establish its priority on the theory that the assignment was merely an assignment of accounts receivable; and that the assignee's rights thereunder are inchoate and imperfect because the instrument was not filed in Denver County, Colorado, which is the county in which the principal place of business of the assignor

is located as required by the Colorado Accounts Receivable Law, C.R.S. '53, 11–2–1 et seq. Apparently the government concludes that the property to which the federal tax lien attached was located in Colorado and therefore proper notice was given to the assignee of accounts receivable as required by Section 6323. I cannot subscribe to this suggestion.

The position of Youngstown is more tenable. The proceeds of the sale of oil constitute an interest in real property which is located in Weston County, Wyoming. The federal recording law requires that notice of the tax lien be filed in the office designated by the law of the State in which the property subject to the lien is situated. Section 29–111, Wyoming Statutes 1957, requires that federal tax liens be recorded in the office of the County Clerk and Ex-Officio Register of Deeds of the county or counties in the State in which the property is situated. The tax lien, therefore, which was recorded in Denver County, Colorado, on January 29, 1957, is not valid as against the mortgagee whose mortgage was recorded in Weston County, Wyoming, the situs of the property, on May 25, 1957. When the notice of the tax lien was recorded in Weston County, Wyoming, on August 22, 1957, it had notice of the intervening rights of the prior recorded mortgage of Youngstown.

■ This conclusion is in accord with the purpose of Section 6323 which "is to give notice to would-be purchasers of the government's right to collect taxes due from the owners of the property". Pipola v. Chicco, D.C.N.Y.1959, 169 F.Supp. 229, 233. In passing Section 6323, Congress also was provoked to avoid the evils and insidious effect of secret federal tax liens. Marteney v. United States, 10 Cir., 1957, 245 F.2d 135. There can be no logical argument that the filing of a tax lien in Denver County, Colorado, the principal place of business of the delinquent taxpayer, and the residence of the mortgagee, gives notice of such lien on the property located in Weston County, Wyoming, to which it is intended to attach.

In view of my decision on the merits of the issues before me, it is not imperative that I pass on the issue of estoppel which was raised in the motion to dismiss. Under the circumstances of the complicated nature of the interpleader actions from which the motion was an outcrop the question of estoppel against the government merits at least a nod of recognition on my part.

Not unmindful of the general rule absolving the government from the defense of estoppel, I reiterate my former comment that I cannot adhere to such an unalterable rule which would jeopardize justice. See City of Sheridan, Wyo. v. Montana-Dakota Utilities Company, D.C. 1958, 157 F.Supp. 664, 670. All the proceedings in these cases leading up to and including the pretrial order were predicated on the absence of a prior claim by the government for delinquent taxes. At the pretrial conference the government voluntarily admitted that its tax lien had not been filed according to law; it thereupon asserted a claim for royalty interest payments which was allowed. This award in the sum of $1,013.30 as a landowner's royalty would not have been made had the government not asserted such a claim when it ascertained that it could not claim priority to a tax lien, and had not all the other parties agreed to accept the substitution of claims by the government. The government failed to present the court with its figure for the total amount of money which it claimed against the fund in the registry as ordered by the Court. Youngstown and the other claimants respected the Court's order in this regard. Though the other claimants to the fund were not completely satisfied with their reduced awards, they all acknowledged at the pretrial conference that a formula for the equitable proportionment of the funds in the registry was necessary and desirable under the circumstances. They acceded to the preparation of a formula by which the funds would be or could be distributed proportionately among all the creditors of C. M. & W. Drilling Company.

Because the government failed to change its position until the last day allowed for filing objections to the Order of Distribution, it thereby adversely affected the formula and also precluded the other parties from likewise filing objections to the pretrial order. In my opinion, I can see inequitable results where, as here, the government does not "observe the same rules and standards of fair dealings that are expected of" and exercised by a private citizen. City of Sheridan, supra, at page 670.

Be that as it may, I find that Youngstown Sheet and Tube Company is protected by the provisions of Section 6323 of the Internal Revenue Code of 1954, and that the lien of the United States for unpaid taxes is inferior to the assignment of proceeds, and that the notice of lien was improperly filed in Colorado and was tardily filed in Weston County, Wyoming. Accordingly, the Motion to Dismiss the Objections is granted.