**OPPENHEIMER v. OLDHAM.**

No. 12668.

United States Court of Appeals
Fifth Circuit.

Dec. 7, 1949.

Leroy G. Denman, Jr., San Antonio, Texas, for appellant.

R. W. Haynie, Abilene, Texas, D. M. Oldham, Dallas, Texas, for appellee.

Before HUTCHESON and RUSSELL, Circuit Judges, and DOOLEY, District Judge.

DOOLEY, District Judge.

J. Sidney Jones was adjudged a bankrupt September 13, 1948 on a voluntary petition filed September 10, 1948, and R. W. Haynie has been the trustee in said bankruptcy estate. The said J. Sidney Jones and wife executed and delivered a vendor's lien note dated July 14, 1948, in the principal sum of $5,000, bearing interest at the rate of 5% per annum, payable to F. G. Oppenheimer, Trustee, for purchase money on 25.36 acres of land located near San Antonio, Texas, and as further security the makers thereof also executed and delivered a cumulative deed of trust lien against the same land. The first knowledge appellant had of the bankruptcy proceedings came by a letter of September 20, 1948 from the trustee, quoted in the margin.[1] The appellant sent the information requested by the trustee. The trustee then wrote appellant another letter of September 27, 1948, also quoted in the margin.[2] The appellant, after receipt of the information and advice from the trustee in the last mentioned letter, filed his claim on said note as a secured creditor in said

1. "J. Sidney Jones, a member of the above firm in bankruptcy, has listed you as a secured creditor, having a lien for $5,000.00 against above 25 acres of land near the country club in San Antonio. He also lists the property as an asset in his Bankrupt case. As Receiver in Bankruptcy, I am filing an application to sell this property free of liens, and will appreciate your kindness in send(ing) me a correct description of the property, or if you have the Abstract of Title, kindly send me a copy of the deed to Mr. Jones, as shown in the Abstract. The tract of land is now in charge of the Bankruptcy Court, and we want to make a sale in order to pay your debt, and realize the equity out of the property for the benefit of the other creditors. Assuring you that I will appreciate your kindness in furnishing me this information. Also please advise me the approximate value in cash of the tract."

2. "Many thanks for your letter of September 24th, relating to the 25 acre tract of land in San Antonio. I am filing an

bankruptcy case on October 18, 1948, but said claim did not include any motion or request to foreclose the lien security by a sale of the aforesaid land for the purpose of collecting appellant's debt through the bankruptcy court.

An application to sell said real estate at private sale, to the highest cash bidder, and free of all liens, was filed by the trustee on September 29, 1948, and after due notice thereof to creditors of the estate, such sale was authorized by an order of the referee made October 14, 1948. The trustee sold said land on November 1, 1948 for the sum of $6,325 and the sale was duly confirmed by the court.

A notice dated October 14, 1948 was issued by the referee to call a meeting of creditors on November 1, 1948 for the purpose of considering the classification, priority and amounts of all secured claims in said bankruptcy estate, and a copy thereof was mailed to appellant, as well as his counsel, and also to other secured creditors. The appellant did not attend said meeting either in person or by a representative. By order dated November 1, 1948 the referee approved the appellant's claim for the amount of $5,000 principal, and $10.42 interest to July 31, 1948, as a valid first lien against said land, and the trustee was directed to pay said amount to appellant from the proceeds of the land less the sum of 5% to be deducted from the amount of said secured claim and applied on court costs and expenses of administration.

The appellant, on December 3, 1948, mailed to the referee a motion for leave to file a petition for review, and also a petition for review, which were received by the referee on December 6, 1948, but not immediately filed, as the referee first notified appellant's counsel that the law required a

$10 filing fee, and upon receipt thereof, the referee filed said motion and petition as of December 6, 1948. The gist of appellant's petition for review is as follows: "That the Referee in bankruptcy was in error in the entry of said order for the reason that the petitioner is entitled to the payment in full of the indebtedness described in said claim with interest to the date of payment and without any deductions for Court costs or the expenses of administration, and in this connection the petitioner would show that it was not at his request nor for his benefit that the sale of the property securing his indebtedness was made and that the bankrupt estate suffered no expenses in connection with the sale or with the care and maintenance of the property sold which should be properly chargeable to the petitioner."

The petition for review was heard December 31, 1948, and the Court below affirmed the action of the referee.

■ It has always been the rule in bankruptcy administration that the accrual of simple interest on unsecured claims runs only to the date of bankruptcy, and as held by most courts the same has been true of deficiently secured claims, but recently the Supreme Court, as part of a general summary of the usages respecting interest on claims in bankruptcy, has said: "Simple interest on secured claims accruing after the petition was filed was denied unless the security was worth more than the sum of principal and interest due." Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 164, 67 S.Ct. 237, 240, 91 L.Ed. 162. The practice of admitting interest on amply secured claims after the date of bankruptcy as reflected in above quotation is consistent in principle with other Supreme Court cases,[3] and that rule has been follow-

application to sell the land free of liens and encumbrances, and the matter will probably be heard October 13th, and the sale can be made any time after that. Of course your lien will be paid out of proceeds, that is if the land sells for more than your debt. I believe, however that we may find a purchaser who will pay more than the amount of your claim against the land. Your claim should be filed with D. M. Oldham, Referee in Bankruptcy, Room 372 Fed-

eral Bldg., Dallas, Texas. Would suggest that when you file your claim, which should be filed before October 14th, that you bid the amount of your claim for the property. Many thanks for the information."

3. Sexton v. Dreyfus, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244; Coder v. Arts, 213 U.S. 223, 29 S.Ct. 436, 53 L.Ed. 772, 16 Ann.Cas. 1008.

ed in this Circuit,[4] and in other Circuits.[5] Since the value of the encumbered land in question, measured by the actual proceeds thereof, was more than sufficient for the purpose, the appellant was entitled to receive the full amount of his principal debt, together with interest accrued thereon to the date of payment.

The above holding is not in conflict with the decision of the Supreme Court in City of New York v. Saper, Trustee in Bankruptcy, 336 U.S. 328, 69 S.Ct. 554, 559. That decision dealt with the propriety of interest on tax claims after bankruptcy, and turns mainly on changes in the statute law wrought principally by the Chandler Act, 11 U.S.C.A. § 1 et seq. The Court points out that before the enactment of that act the lower courts had been allowing interest on tax claims until payment, "either as a matter of practical convenience or because Sec. 64, sub. a gave those claims absolute priority and dispensed with proof." The law formerly put tax liabilities in a sovereign class above the status of mere claims in bankruptcy. In fact the filing of a claim was unnecessary, but nevertheless taxes were payable as imperative obligations commanding absolute priority. The act of 1926[6] reinforced by the Chandler Act[7] reversed that highly favored position of tax liabilities, which instead were shifted to the rank of simple claims in bankruptcy, and the Court concluded that the continued allowance of interest on tax claims after bankruptcy would be inconsistent with such changes made in the framework of the bankruptcy law.

■ Those considerations have no bearing on contractual debts presented as secured claims in bankruptcy. It has always been a fundamental principle of the bankruptcy law that the property rights and in-terests designated as liens and pledges, when valid in bankruptcy, shall not be impaired in the administration of a bankrupt estate. The Chandler Act manifests no intent to deviate from that principle. It is true that in the revision of Sec. 67, sub. d the Chandler Act did not retain the old language saying expressly that liens valid in bankruptcy shall "not be affected by anything herein", but that provision was simply declaratory of the obvious import reflected, and still reflected, frequently in the substantive terms of the law, and the omission of such redundancy is not significant.[8]

■ The amount taxed by the referee as costs and expenses of administration in connection with the sale of the land in question was deducted against the appellant, although the proceeds of the sale were more than sufficient to have stood said charge and still have left the appellant's debt intact. A demonstrated equity existed in the land and the bankruptcy court rightly sought to capture said equity for the benefit of the general estate. The land was subject to the jurisdiction of the court and under the circumstances appellant was obliged to file his claim as a secured creditor.[9] He was not really a movant, nor yet an intruder or volunteer. He came into court in self protection to hold, rather than purposely to foreclose, his lien. The sale of the land, as shown in the trustee's first letter aforesaid, was at the initiative of the trustee in order to sever the equity in the land. The appellant's note contained a 10% attorney's fee clause, and, free to act, he likely could have foreclosed his security for a full recovery without any cost falling on the principal or interest of his debt. A court of bankruptcy is a court of equity, and it would be inequitable to deduct said costs and expenses from the appellant's debt in-

4. San Antonio Loan & Trust Co. v. Booth, 5 Cir., 2 F.2d 590; Peoples Homestead Association v. Bartlette, 5 Cir., 33 F.2d 561.

5. United States v. Sampsell, 9 Cir., 153 F.2d 731; Wilson v. Dewey, 8 Cir., 133 F.2d 962; Sehon-Stevenson & Co. v. Union Trust Co., 4 Cir., 113 F.2d 968; Mortgage Loan Co. v. Livingston, 8 Cir., 45 F.2d 28.

6. Act of May 27, 1926, c. 406, 44 Stat. 662.

7. Act of June 22, 1938, c. 575, 52 Stat. 840.

8. In re Van Winkle, D.C., 49 F.Supp. 711.

9. United States National Bank in Johnstown v. Chase National Bank, 331 U.S. 28, 33, 67 S.Ct. 1041, 91 L.Ed. 1320.

390

stead of from the surplus representing the equity in the land.[10]

■ The referee's order here in question was dated November 1, 1948, and the petition for review was filed December 6, 1948. The appellee contends that appellant sought to appeal too late. The trustee at some undisclosed time, but before December 3, 1948, mailed to the appellant a copy of said order and also a check for $4,759.90 in settlement of his claim. The appellant says that in view of the letters he received from the trustee, heretofore quoted, he thought it would be unnecessary for him to attend the meeting of creditors called for November 1, 1948, and that the first knowledge he had about the terms of the order here in question approving his claim, with interest only to July 31, 1948 and subject to a deduction for court costs and expenses of administration, was when he received the aforesaid check and copy of the order from the trustee, apparently about December 1, 1948. The bankruptcy law, Sec. 39, sub. c, 11 U.S.C.A. § 67, sub. c, provides that a person aggrieved by a referee's order may, "within ten days after the entry thereof, or within such extended time as the court may for cause shown allow," file a petition for review. The Court below in ruling against the appellant's petition for review noted that same had been filed late, but the order does not show what view the Court may have taken about the question of good cause for an extension of time, although the Court's decision clearly was on the merits of appellant's petition for review. In fact the Court not only ruled on the merits of the points raised by appellant, but allowed him to file some additional exhibits in support of the petition for review. The Court could have dismissed said petition for review on the ground of the belated filing date, but that was not done, and we think that the only question is whether the Court had discretion to hear the petition for review in spite of appellant's failure to file same within the time prescribed in the above section of the law. That provision of the law is not jurisdictional, and notwithstanding the appellant's default, the Court had the power to hear and determine said petition for review.[11]

The judgment of the district court is reversed and the cause remanded.

---

10. Rubenstein v. Nourse, 8 Cir., 70 F.2d 482.

11. Pfister v. Northern Illinois Finance Corp., 317 U.S. 144, 63 S.Ct. 133, 87 L.Ed. 146.