Henry Clay Greenberg, J.
By motion No. 87 of the calendar of April 11, 1963 defendant-in-intervention, the Guardian Life Insurance Company of America, moves for summary judgment dismissing the complaint. The defendant and defendant-in-intervention, the Equitable Life Assurance Society of the United States, by cross motion, moves for leave to pay into court the amount of money it is holding, less its costs and counsel fees and to be discharged. By motion No. 88 of the same calendar, the plaintiff-in-inter'vention, United States of America, cross-moves for summary judgment against all the defendants-in-intervention. By motion No. 89 of said calendar, the plaintiff and defendant-in-intervention, Bankers Trust Company, moves for summary judgment against Equitable and to dismiss the intervening complaint against it. Massachusetts Mutual Life Insurance Company appeared in opposition to the motion of the United States claiming that issues of fact were presented. The individual defendants-in-intervention Fynke interposed no opposition to any of the motions. These motions are consolidated and will be determined together.
The issue to be determined by the court is whether the lien on the cash surrender value of various life insurance policies, *1037 assigned to Bankers Trust as collateral for loans, is superior to the tax lien of the United States.
Following is a statement of the facts. Bankers Trust and its predecessor had been financing Fynke’s business for many years. On February 2, 1949 he assigned two Equitable policies to Bankers’ predecessor to secure loans. On February 9, 1949 he assigned a Massachusetts Mutual policy for the same purpose. On June 17, 1953 delinquent income taxes were assessed against Fynke. Notice of the tax lien was filed in the Nassau County Clerk’s office on November 13, 1953. This was the county in which the taxpayer resided. The Equitable policy assignments were terminated on April 21, 1955 and new assignments made on April 22, 1955. The Massachusetts policy assignment was terminated on April 21, 1955 and a new assignment made on April 22, 1955. On April 8, 1955 two additional Equitable policies were assigned. On May 8, 1957 a sixth policy issued by Guardian Life was assigned. The assignments of the Massachusetts and Guardian policies have been honored by those companies, the policies cancelled and the cash surrender value paid to Bankers Trust. Equitable has cancelled its four policies and has deposited the cash surrender value in its suspense account. In this action, Bankers Trust is suing Equitable to recover this cash surrender value. The United States, intervening, claims this fund as well as the moneys already paid to Bankers.
The United States contends that the notice of tax lien which was properly filed in the Nassau County Clerk’s office on November 13, 1953 was before the assignments of the policies made on April 8 and 22,1955 and May 8, 1957 and therefore it is entitled to priority.
It is not claimed that either Equitable or Guardian had actual notice of the tax lien before September 7,1960 or Massachusetts Mutual before October 4, 1960. These were the dates on which notices of levy were served on the insurance companies. At that time they had in their possession the cash surrender value of the various policies. Bankers Trust contends that the earliest date on which it could have had actual notice was August 8, 1960.
Section 3670 of the Internal Revenue Code of 1939 (now U. S. Code, tit. 26, § 6321) provides that the United States shall have a lien on all property and rights of property, real or personal, belonging to a person who is liable to pay taxes but does not do so. Section 3671 (now § 6322) fixes the period of the lien to arise from the time the assessment is made. Section 3672 (now § 6323) declares such lien to be invalid against mortgagees, pledgees, purchasers or judgment creditors until notice has been *1038 filed: 1 ‘ In the office * * * in which the property subject to the lien is situated, whenever the State or Territory has by law provided for the filing of such notice ” (subd. [a], par. [1]).
It then continues and provides for filing in the District Court in which the property is situated if the State has not acted (subd. [a], par. [2]).
New York State had so designated a place of filing such notices (New York Lien Law, § 240). With respect to personal property, subdivision 2 thereof states: “Notices of liens upon personal property * * * shall be filed in the county within the city of New York * * * where the owner, if a resident of the state, resides at the time the lien arises, and if not a resident, in the county within the city of New York or in the town or city where the property is at such time. * # * If the property is in the city of New York at the time the lien arises, the notice * * * shall be filed in the county within the city of New York * * * where the owner, or each of several owners who are residents of the state, resides at the time the lien arises, and also in the county Avhere the property is situated.”
As to the property owned by the delinquent taxpayer, the lien arose on June 17, 1953. It would attach to the cash value of the life insurance policies in question (United States v. Bess, 357 U. S. 51). However, under the policies and the laws of this State, the insured had property rights in the cash surrender value which he could borrow against, assign or pledge (Insurance Law, § 166, subd. 4). If the assignments preceded in time the date on which the tax lien arose, they have priority and Bankers Trust must prevail. If the United States filed its assessment, pursuant to the statutes, prior to the assignments, it has priority.
In order for the United States to acquire a valid lien against Bankers Trust, a pledgee, it must have filed a notice of the lien where the property is situated. The cash surrender value of the policies in question was personal property; on the assignment of the surrender value to Bankers, to guarantee loans, the situs of these intangibles was in New York City, the place where the holding party and the fund were located (Goldstein v. Bankers Commercial Corp., 152 F. Supp. 856, affd. sub nom. Goldstein v. United States, 257 F. 2d 48). Therefore, the United States having failed to file pursuant to the statute, no valid lien was acquired with respect to those funds. In addition, the facts show that this was a continuing financing arrangement by Bankers Trust. The termination of the assignments of some of the policies and the execution of a new assignment on the following day did not serve as a new date to determine when the *1039 assignment was made. It was merely a renewal of the obligation (Cohen v. Rossmore, 225 App. Div. 300).
Therefore, motion No. 87 by Guardian for summary judgment is granted. The cross motion thereto by Equitable is denied. Cross motion No. 88 by the United States for summary judgment is denied. Motion No. 89 by the Bankers Trust for summary judgment against Equitable and dismissing the intervening complaint against it is granted.