BANKERS TRUST COMPANY, Respondent, *v.* EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant.
UNITED STATES OF AMERICA, Plaintiff-in-Intervention, Appellant, *v.* BANKERS TRUST COMPANY, Defendant-in-Intervention, Respondent, et al, Defendants-in-Intervention.

First Department, March 25, 1965.

*Clarence M. Dunnaville, Jr.,* of counsel (*Laurence Vogel* with him on the brief; *Robert M. Morgenthau, United States Attorney for the Southern District of New York*), attorney for appellant.

*Arnold A. Jaffe* of counsel (*Joseph L. Fishman* with him on the brief; *Moses & Singer,* attorneys), for respondent.

Bastow, J. This appeal requires determination of the priority of the claims of plaintiff, Bankers Trust Company (Bankers), and the plaintiff-in-intervention, United States of America (Government), to the cash surrender value of certain life insurance policies on the life of one Fynke, a defendant-in-intervention. More specifically, the issue presented is the validity, as opposed to the claim of Bankers, of the Government's tax lien filed with the Clerk of the county of Fynke's residence but not filed pursuant to the provisions of subdivision 2 of section 240 of the Lien Law of this State (if here applicable) in the county where the insurance policies were situated.

On November 13, 1953 the Government filed a notice of tax lien with respect to income taxes theretofore assessed against Fynke in the office of the Clerk of the county (Nassau) of his residence. There is presently due the Government an amount in excess of $93,000. Prior to the date of such filing Fynke had

assigned to Bankers (or its predecessor) life insurance policies having a cash surrender value of approximately $36,000 and Bankers had advanced to Fynke (individually or on his guarantee) various amounts resulting in an unpaid balance of $13,000 at the date the lien was filed. Subsequent to November 13, 1953, Fynke assigned to Bankers three additional policies with a total cash surrender value of $7,600. Bankers made additional advances resulting in a further unpaid balance of approximately $29,000.

In the Fall of 1960 the Government gave actual notice of its lien to the several insurance companies. Thereafter Bankers in July, 1961 refused to renew the notes, cancelled the policies and eventually received approximately $45,000 as the cash surrender value with interest of the several policies. The indebtedness of Fynke personally and on his guarantees to Bankers at that time amounted to approximately $43,000.

Section 3670 of the Internal Revenue Code of 1939 (now U. S. Code, tit. 26, § 6321) gives the Government a lien upon all property and rights to property, whether real or personal, belonging to a person who neglects or refuses to pay his taxes after demand. Such lien arises at the time the assessment is made (1939 Code, § 3671, now § 6322). Subdivision (a) of section 3672 (now § 6323, subd. [a]), so far as here applicable, makes such tax lien invalid " as against any * * * pledgee * * * until notice thereof has been filed by the collector (1) * * * In the office in which the filing of such notice is authorized by the law of the State * * * in which the property subject to the lien is situated, whenever the State * * * has by law authorized the filing of such notice in an office within the State ".

This permissive grant of authority to the several States to legislate on the subject had its origin in an Act of Congress of March 4, 1913 amending section 3186 of the U. S. Revised Statutes. (37 U. S. Stat. 1016.) In 1925 New York first took advantage of the grant by the enactment of article 10-A of the Lien Law (L. 1925, ch. 626). In 1944 the Law Revision Commission made a study of the subject of the filing of Federal tax liens in this State (N. Y. Legis. Doc., 1944, No. 65 [H]) which resulted in the enactment of a new article 10-A (L. 1944, ch. 536). Subdivision 2 of section 240 of that law, so far as here material, provides that " Notices of liens upon personal property for taxes payable to the United States * * * shall be filed * * * in the town or city where the owner * * * resides at the time the lien arises * * * If the property is in the city of New York at the time the lien arises, the notice * * * shall

be filed  \*  \*  \*  in the town or city where the owner  \*  \*  \* resides at the time the lien arises, and also in the county where the property is situated."

It is here conceded that notice of the tax lien was not filed in New York County where the life insurance policies representing the funds in question (cash surrender values) were situated. The issue as to whether the required notice has been filed in accordance with the law of this State is controlled by New York law (cf. *United States* v. *Ullman*, 179 F. Supp. 373, 375). The uncertainties in this area of the law are well expressed by a quotation from this same (*Ullman*) case (pp. 376–377): "The law concerning the situs of a chose in action is presently unsettled. Particularly is this true with regard to the situs of an insurance policy.  \*  \*  \*  The answer to what rule was intended to be applied in the 1929 Pennsylvania Federal Tax Recording Statute can only be determined by a calculated guess."

Turning to the law of this State, this court has held " that a life insurance policy is personal property which may be the subject of a quasi-in-rem action. As evidence of a debt a policy of insurance is a chose in action and, hence, personal property." (*Mondin* v. *Mondin*, 274 App. Div. 69, 73–74.) It has long been held that under some circumstances the cash surrender value of a policy is a " fund " held by the insurer for the benefit of the insured. (*Matter of McKinney*, 15 F. 535.) Whatever doubts may have once existed (cf. *United States* v. *Behrens*, 230 F. 2d 504, 506) were put to rest by *United States* v. *Bess* (357 U. S. 51). There the issue, so far as here material, was whether an insured in his lifetime possessed, within the meaning of section 3670 of the Internal Revenue Code of 1939, " property " or " rights to property " in the cash surrender values of life insurance policies to which a lien for unpaid taxes might attach. It was held that the insured did possess such property rights and the court quoted with approval (p. 56) the following language from the opinion of the Circuit Court: " Thus [the insured] ' possessed just prior to his death, a chose in action in the amount stated [i.e., the cash surrender value] which he could have collected from the insurance companies in accordance with the terms of the policies.' 243 F. 2d 675, 678."

" The situs of intangibles, such as debts and choses in action, is in truth a legal fiction, but there are times when justice or convenience requires that a legal situs be ascribed to them. The locality selected is for some purposes the domicil of the creditor; for others, the domicil or place of business of the debtor, the place, that is to say, where the obligation was created or was meant to be discharged; for others, any place where the

debtor can be found. At the root of the selection is generally a common-sense appraisal of the requirements of justice and convenience in particular conditions. * * * For tax purposes, intangibles may have a situs of their own away from the domicil of the owner. Intangible personal property the ownership of which is evidenced by documents may have a situs away from the domicil of its owner." (8 N. Y. Jur., Conflict of Laws, § 15.) (See, also, 49 Yale L. J. 241–273; 30 St. John's L. Rev. 224–236.)

The general rule was thus stated in *Matter of Brown* (274 N. Y. 10, 18): " The principle that *situs* of intangible personalty follows domicile, frequently arbitrarily and strictly applied, has given way to the logical and rational exception that where ' the fact is clear that the intangible property has a *situs* elsewhere,' the fiction will not be followed." Thus, it has been held " that if the chose in action has assumed the form of a commercial specialty, such as a bill of exchange or promissory note, its transfer is governed by the law of the place of the document at the time of the transfer." (*Weissman* v. *Banque De Bruxelles*, 254 N. Y. 488, 494.) (See, also, *Hutchison* v. *Ross,* 262 N. Y. 381, 389–391.)

Similarly, an intangible such as a bank account may acquire a situs separate and distinct from the domicile of its owner. In *Feuchtwanger* v. *Central Hanover Bank* (288 N. Y. 342) a Paris bank caused Federal Reserve notes owned by plaintiff and held by a Montreal bank to be transmitted to a New York bank for deposit to the credit of the Paris bank. The court in affirming a judgment impressing a trust upon the funds of the Paris bank on deposit with the New York bank held that jurisdiction of the French bank had been acquired by publication since the complaint demanded that defendant be excluded from a vested or contingent interest in or lien upon specific personal property. The court said (p. 345): " This very judgment shows that such an intangible *res* is so far capable of explicit designation as to be ' *specific* personal property ' within the meaning of section 232 " of the Civil Practice Act. (See, also, *Matter of Menschefrend,* 283 App. Div. 463, affd. 8 N Y 2d 1093, cert. den. *sub nom. Brown* v. *Lefkowitz,* 365 U. S. 842.)

There has been a paucity of decisions construing the provision of section 240 of the Lien Law requiring that notices of lien for Federal taxes upon personal property situated in a county within New York City be there filed and also in the county of the owner of the property. It appears to have had its genesis in similar provisions elsewhere in the Lien Law and the framers of the proposed legislation made it clear that

" personal property " was intended to include intangible property without shedding further light on the subject (N. Y. Legis. Doc., 1944, No. 65 [H], p. 15).

Our decision in *Matter of Mintz v. Fischer* (19 A D 2d 36) is not here controlling and is clearly distinguishable. We there held that subdivision 2 of section 240 of the Lien Law did not require filing of notice of a Federal tax lien in New York County, the residence of the debtor of the taxpayer. The notice had been filed in the county (Queens) of residence of the taxpayer and the claim of required dual filing was advanced by a judgment creditor of the taxpayer. Our decision, as stated therein, was based on "a common sense appraisal of the requirements of justice and convenience in particular conditions" (*Severnoe Securities Corp. v. London & Lancashire Ins. Co.*, 255 N. Y. 120, 123–124).

The application of that principle leads us to conclude that here the Government was required to file notice of its lien in New York County where the fund was situated. It is common knowledge that in recent years the securing of bank loans by means of pledging life insurance policies with substantial cash surrender values has greatly increased until they have practically " assumed the form of a commercial specialty " (*Weissman v. Banque De Bruxelles*, 254 N. Y. 488, 494, *supra*). The " particular conditions " here present are not to be ignored. Some seven years elapsed from the time the Government filed its notice of lien in Nassau County until notice thereof was given to the insurance companies. During those years the loans of the bank had increased nearly $30,000 and additional policies had been assigned as security therefor. It may be surmised that the Government kept itself informed and was content to drift along with the hope (eventually unfulfilled) that the taxpayer, assisted by bank financing, could some day pay the taxes overdue by nearly 20 years. All of this could have been avoided by prompt filing of the notice of lien in the county where the policies were located or, if not avoided, the bank could have had no complaint by reason of constructive notice.

While, as stated, the problem is one that must be decided by State law, it is noteworthy that a Federal court has impliedly reached a similar conclusion (*Goldstein v. Bankers Comm. Corp.*, 152 F. Supp. 856, affd. *sub nom. Goldstein v. United States*, 257 F. 2d 48). There a fund was held by a finance corporation in New York County. A dispute arose as to whether the corporate taxpayer was a resident of New York or Pennsylvania. The Government filed its notices of lien in New York

County. The court held (p. 860) that even if the taxpayer was a nonresident "the notices were properly filed under the [New York] Lien Law because the property against which the lien was asserted—i.e. the fund in suit and the office of [the finance corporation] which held the fund—were located in [New York] County."

It is recognized that the question presented is not one capable of easy or precise answer. The Supreme Court in recently passing upon the situs of intangible property stated: "We realize that this case could have been resolved otherwise, for the issue here is not controlled by statutory or constitutional provisions or by past decisions, nor is it entirely one of logic. It is fundamentally a question of ease of administration and of equity. We believe that the rule we adopt is the fairest, is easy to apply, and in the long run will be the most generally acceptable to all the States." (*Texas* v. *New Jersey*, 379 U. S. 674, 683.)

The order, entered on November 20, 1963, should be affirmed, with costs and disbursements.

STEUER, J. (dissenting). We dissent. The basis of disagreement is found in the quotation from *Texas* v. *New Jersey* (379 U. S. 674, 683) with which the majority opinion concludes: "It is fundamentally a question of ease of administration and of equity."

The general rule is that filing in the county of the residence of the creditor taxpayer establishes the priority of the Government's lien on choses in action (*Matter of Mintz* v. *Fischer*, 19 A D 2d 36). This is on the theory that the residence of the creditor is the situs of the debt. The majority makes an exception on the ground that certain types of choses in action have a different situs. The specific type in question is the claim to the cash surrender value of an insurance policy which the policyholder has. There is no doubt but that in certain situations, and more frequently in lay conception, claims generally represented by formal instruments are treated as having the situs of the instrument itself. These would include, among many others, an insurance policy or a savings bankbook. Other types of claims, especially those against large institutions, are often regarded as having the same situs as the institution. The question here is whether exception should be made for these types of intangibles in the general rule which applies to the effect of filing a tax lien pursuant to subdivision 2 of section 240 of the Lien Law. The answer, we submit, is not to be found in decisions interpreting the nature of choses in action but in the needs of orderly administration, limited by the consideration

of what would be fair and reasonable, having due regard to business practices.

The purpose behind the requirement of filing the lien is to give notice to persons who intend to deal with the taxpayer that the United States has a claim against him for unpaid taxes. Such notice should warn any prospective lender or person extending credit that his claim would be subject to the prior claim of the Department of Internal Revenue. The place of filing is only significant in that it gives the prospective creditor a place to look to determine whether such a lien has been filed. If the place of filing depends on how a court interprets the nature of the taxpayer's claim and the situs it assigns to it, there is bound to be uncertainty. Where the particular form of intangible has been the subject of review, the prospective creditor will have to interpret the decision. Where it has not, he will have to anticipate what it will be and search in the county that his conclusion indicates. The same applies to the Government—it will have to make similar determinations as to where to file. We submit that, where it is known that all intangibles have a single situs and this situs is the easily ascertainable one of the residence of the tax debtor, the purposes of both the prospective creditor and the Government are equally served.

It may be argued that most prospective creditors will not be aware of the rule that the situs of the debt is the taxpayer's residence. This is very likely true. But it is equally true that most of such people will be equally unaware of any provisions for filing at all. In the instant case, with such an experienced lender as the plaintiff, there is no claim of inequity or that the bank was misled by the circumstances into examining the records in the wrong county. In fact, there is no claim that a search was made in any county. Surely if the practice of lenders is not to make any search, there can be no equitable complaint as to what county is designated as the place of filing. If the practice were otherwise, as it is in the case of real estate, it would be only fair to give that practice consideration.

We believe that the pragmatic solution of the question is not to be found in the differing possibilities which may attend a proper determination of the admittedly theoretical concept of debt situs. Rather are administrative needs best served by certainty. And the simplest and most feasible method of attaining certainty for the proper place of filing and having it known is to have but a single situs applicable to all intangibles. For the purposes of this statute, the situs already determined for simple debts, that of the residence of the creditor, should apply to all claims of any nature.

We vote to reverse and grant summary judgment to the plaintiff-in-intervention.

BREITEL and STEVENS, JJ., concur with BASTOW, J.; STEUER, J., dissents in opinion in which BOTEIN, P. J., concurs.

Order, entered on November 20, 1963, affirmed, with $30 costs and disbursements to respondent.