**In re Marvin BUSMAN and Laura Busman, Debtors.**

**Bankruptcy No. 880–0172.**

United States Bankruptcy Court,
E. D. New York.

July 25, 1980.

Donner, Fagelson, Hariton & Berka, P.C.,
Bay Shore, New York, for debtors.

Edward R. Korman, United States Atty.,
Brooklyn, New York.

## DECISION

C. ALBERT PARENTE, Bankruptcy Judge.

The issue presented arises from an objection filed by the United States Attorney, on behalf of the Internal Revenue Service (IRS), opposing the confirmation of Marvin and Laura Busman's (hereafter "debtors") amended plan of arrangement under Chapter 13 of the Bankruptcy Code.

The plan provides for payment to priority creditors at one-hundred percent of their scheduled claims, without interest, over a thirty-six month period. IRS is listed in the amended plan as a priority creditor.

At the time of filing the petition, the debtors had outstanding a tax liability, including penalties and interest, in the sum of $4,050.97. IRS contends that its claim is a secured "priority" (sic) claim by virtue of having obtained tax liens on all of the debtors' personal and real property pursuant to Title 26 U.S.C. § 6321. It is further alleged that in accord with said section of the Internal Revenue Code, the tax lien encumbering debtors' real and personal property was perfected by the filing of Notice of Federal Tax Lien with the Suffolk County Clerk's Office prior to the filing of the debtors' Chapter 13 petition.

Premised thereon, IRS asserts that it is a holder of a secured priority claim, and coordinate therewith objects to the confirmation of the debtors' amended plan on the ground that the plan fails to provide for payment of post-petition interest on its secured tax claim. The objection in essence posits upon the following arguments collectively or in the alternative:

(1) That IRS is entitled to post-petition interest on its secured tax claim contending that the value of the collateral securing the tax claim exceeds the value of the claim. § 506(b).

(2) That IRS is entitled to post-petition interest pursuant to § 1325(a)(5)(B)(ii). Said statutory proviso mandates that if a Chapter 13 plan provides for payments to secured creditors over time in installments at face value, the holders of se-cured claims are entitled to also receive an appropriate "interest" or "discount" figure.

The text of § 506(b) of the Bankruptcy Code, as here pertinent, reads:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

The text of § 1325(a)(5)(B)(ii), as here pertinent, reads:

(5) with respect to each allowed secured claim provided for by the plan—

. . . . . .

(B)(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

Debtors' responsive pleading seeks to rebut the IRS position by alleging that IRS is not a holder of a secured claim but rather stands in the posture of a priority creditor by virtue of a late filing of its claim, thereby invoking the prescriptive stricture of Rule 13–302, Rules of Bankruptcy Procedure, and as a causal consequence of the late filing, negating any right to post-petition interest on its tax claim. Debtors' argument is further anchored to the precepts following: (1) the tax liens may be subject to the trustee's avoiding powers contained in Chapter 5 of Title 11; and (2) the IRS may not have perfected its tax liens in the manner prescribed by the Uniform Commercial Code.

The undisputed and relatively simple fact pattern evolves into a rather complex and multi-faceted issue synthesized as follows:

(1) What is the proper classification of a claim under the Bankruptcy Code deriving from a tax lien?

(2) Did IRS in the case at bar duly perfect its tax lien in comport with the recording imperatives of state law?

(3) Is post-petition interest an allowable claim in the context of a Chapter 13 case?

(4) What is the significance and reach of Rule 13–302, Rules of Bankruptcy Procedure, as it pertains to the late filing of a secured tax claim?

(5) What is the proper rate of post-petition interest allowable on a tax claim?

Responding to the above delineated prongs of the issue *ad seriatim*, the Court in the first instance is directed to Title 26, § 6321 of the United States Code entitled Lien for Taxes:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

■ The above-cited text articulates the rule that a tax claim unpaid after notice and demand matures into a tax lien. *U. S. v. Cleavenger*, 325 F.Supp. 871 (N.D.Ind. 1971).

■ Attached to the IRS Proof of Claim is a notice for federal tax lien stating that a demand for payment has been made and the tax liability after such demand remains unpaid. On such facts and consonant with defendants' failure to rebut or disprove the IRS contention, it is probatively established that the IRS has a valid subsisting tax lien pursuant to the dictate of U.S.C. Title 26 § 6321.

Parenthetically, Section 6334 of Title 26 United States Code, exempts certain items of personal property from a tax levy, viz.:

(1) wearing apparel and school books;

(2) fuel, provisions, furniture and personal effects;

(3) books and tools of a trade, business or profession;

(4) unemployment benefits;

(5) undelivered mail;

(6) annuity or pension payments under the Railroad Retirement Act;

(7) worker's compensation;

(8) judgments for support of minor children; and

(9) minimum exemption for wages, salary and other income.

The foregoing exemptions are enumerated as germane inasmuch as the tax lien encumbers both real and personal property and thus bears upon the scope of the lien, and may affect execution and levy.

■ Adverting to debtors' contention that the tax lien may be subject to the avoiding powers of the trustee (§§ 545 and 546), lacking any supportive proof debtors' naked allegations are rendered probatively vacuous and clearly a non-factor in the subject dispute. Liens cannot be tacitly avoided nor can allegations be transmuted *ipso facto* into the essential evidentiary proof demanded by established adversary process.

The second prong of the issue encompasses the question of perfection. U.S.C. Title 26 § 6323(f) prescribes the perfection criteria in the essence following:

> To perfect a tax lien, a notice of federal tax lien must be filed: (1) as to real property in the office designated by state law in which the property subject to the lien is situated; and (2) as to personal property, in the office designated by state law in which the property subject to the lien is situated.

The uncontroverted record clearly denotes due compliance by IRS with the statutory requisite of § 6323(f), supra. IRS filed the appropriate notice of federal tax lien with the Suffolk County Clerk's Office as required by state law. *Bankers Trust Co. v. Equitable Life Assur. Soc. of U. S.*, 39 Misc.2d 1035, 242 N.Y.S.2d 441 (N.Y.County 1963); aff'd. 257 N.Y.S.2d 502, 22 A.D.2d 579 (1st Dept. 1965); rev'd. 19 N.Y.2d 552, 281 N.Y.S.2d 57, 227 N.E.2d 863 (1967).

■ The above findings dispel any doubt that the IRS is the holder of a perfected secured claim with respect to debtor's tax liability.

The third component of the issue focuses upon whether post-petition interest on a tax claim is allowable.

Section 502(a) governs allowance of a claim or interest. The text thereof follows:
(a) A claim or interest, proof of which is filed under § 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a partner in a partnership that is a debtor in a case under Chapter 7 of this title, objects.

Exceptions to the allowability of claims or interest appear in subdivision (b) of § 502. Paragraph (2) thereof disallows a claim to the extent that the claim is for unmatured interest as of the date of the petition. Moreover, post-petition interest is expressly barred, including any portion of prepaid interest that represents an original discounting of the claim not earned on the date of the filing of the petition.

A literal interpretation of paragraph (2) would seemingly bar all post-petition interest. This, of course, is not the case. The statute merely recites the general rule pertaining to unmatured interest. The provision further tracks the principle that interest stops running from the date of the filing of a petition in bankruptcy. More definitively, it appertains as a rule of liquidation rather than a tenet of substantive law.

Implicitly, the rule is restricted to liquidation cases wherein the law disregards for purposes of liquidation only, interest accruing after the date of the filing of the petition in bankruptcy. By ample majority, case precedent has held that interest ceases after the inception of bankruptcy, nevertheless the obligation to pay interest is deemed revived and is reinstated where the bankrupt estate is solvent, or where the collateral is sufficient to meet the cost of principal and interest. *Littleton v. Kincaid*, 179 F.2d 848 (4th Cir. 1950); *Sexton v. Dreyfus*, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244 (1910).

Thus, the rule is clearly not entrenched as an absolute, nor more pointedly does it draw into its restrictive parameters the rights of secured creditors. It has always been a fundamental principle of bankruptcy law that a lien when valid in bankruptcy shall not be impaired in the administration of a bankrupt estate. *Oppenheimer v. Oldham*, 178 F.2d 386 (5th Cir. 1949).

Prior to 1949, interest was permitted to accrue on delinquent taxes. This long standing precept was repudiated by the United States Supreme Court in the case of *City of New York v. Saper*, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949). The thrust of the court's rationalization corradiated from the 1938 amendment to the Bankruptcy Act providing that tax claims (it is to be noted and stressed that the decision dealt with unsecured tax claims and did not address tax liens) were to be treated the same as other debts, except for a fourth priority in payment. Section 64(a) Bankruptcy Act.

The doctrine of *Saper* was extended to arrangements and reorganizations. In comity with the *Saper* rule, the United States Court of Appeals for the Second Circuit in *Sword Line v. Industrial Commissioner of New York*, 212 F.2d 865 (1954), cert. denied, 348 U.S. 830, 75 S.Ct. 53, 99 L.Ed. 654 (1954), barred efforts of the secured creditor to collect post-bankruptcy interest in the state courts after discharge or confirmation of an arrangement or plan.

The cited cases, however, were effectively overruled by the United States Supreme Court in *Bruning v. U. S.*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964), wherein the court held that an individual bankrupt remains personally liable for post-petition interest on tax claims notwithstanding the order of discharge and despite the fact that the interest is not collectible from the estate. Essentially, the court decreed that post-petition interest is recoverable from after acquired assets. The *Bruning* doctrine was recently adhered to in the case of *In re Jaylaw Drug, Inc. v. United States Internal Revenue Service and Empire National Bank*, 1 B.R. 512, 1979.

The language adopted by the Supreme Court in *Bruning*, supra at p. 361, 84 S.Ct. at p. 908, is illuminating:

We find no indication in the wording or history of § 6873(a) (of the Internal Revenue Code of 1949) that the section was meant to limit the Government's right to continuing interest on an undischarged and unpaid tax liability. Nor is petitioner aided by the now-familiar principle that one main purpose of the Bankruptcy Act is to let the honest debtor begin his financial life anew. As the Court of Appeals noted, § 17 is not a compassionate section for debtors. Rather, it demonstrates congressional judgment that certain problems, *e. g.,* those of financing government, override the value of giving the debtor a wholly fresh start. *Congress clearly intended that personal liability for unpaid tax debts survive bankruptcy. The general humanitarian purpose of the Bankruptcy Act provides no reason to believe that Congress had a different intention with regard to personal liability for the interest on such debts.* (Emphasis added).

A studied analysis of the *Bruning* decision followed by the Second Circuit Court of Appeals in *Jaylaw,* in tandem with the legislative history of Chapter 13, laying emphasis on the fact that said chapter was devised and promulgated as a vehicle for the voluntary payment of debts, gives reasonable impetus and opprobrium to the concept of extending the *Bruning* doctrine to Chapter 13 cases under the Code. This Court is persuaded that the evocative theme of *Bruning* elicits the corollary following: since post-petition interest is collectible in a non-liened tax claim *a fortiori,* such obligation explicitly obtains on a duly perfected and filed liened tax claim.

Notwithstanding the foregoing, an acute dichotomy of opinion is extant in a line of cases, bifurcating the treatment of consensual liens in contrast to liened tax claims. Some courts have drawn a distinction between consensual liens where a specific asset is voluntarily encumbered in contrast to taxes that have matured into liens. Non-liened tax claims are equated with liened tax claims, thereby devising grounds for disallowance of post-petition interest. See *In the Matter of Cameron* (S.D.Cal.1958), 166 F.Supp. 400, affd. sub nom., 271 F.2d 129 (9th Cir. 1959), where the court stated, "There is no justification for a distinction between ordinary taxes and taxes which are made subject to a lien".

In diametric polarity, most courts make no such distinction and support the concept that secured creditors are entitled to interest to the date of payment where the security is sufficient to cover both principal and interest. *Oppenheimer v. Oldham,* supra.

The diverse opinions expressed by the respective courts are apparently reconciled by legislative intent as expressed in the statutory purport of § 506(b), supra, and in the alternative by the impact of § 1325(a)(5)(B)(ii) of the Code. The codification of law embodied in subsection (b) of § 506 provides definitively and unequivocally that a creditor with an over-secured claim is entitled to any reasonable fees, costs or charges provided for under the agreement from which the claim arose. These addendum fees, costs and charges are inclusive of interest and are deemed secured claims to the extent that the value of the collateral exceeds the amount of the underlying claim.

Appositely and pursuant to the proviso of § 1325(a)(5)(B)(ii), unless the secured creditor accepts the plan, he retains the lien securing his allowed claim in addition to receiving value of not less than the amount of the allowed claim.

The above subsection mandates that a secured creditor receive under the plan *"value as of the effective date of the plan" equal to the allowed amount* of the claim. The import of the language underlined is construed as the *present value* as of the date of the confirmation inclusive of deferred cash payments payable over time in installments equal to the aggregate amount of the claim. See: 5 Collier on Bankruptcy, 15th Ed. (1979) ¶ 1325.01(2) at p. 1325–26, stating:

In order to implement § 1325(a)(5)(B)(ii) the court must capitalize deferred payments by converting the deferred payments proposed to be distributed under

the chapter 13 plan into an equivalent capital sum as of the effective date of the plan. Section 1325(a)(5)(B)(ii) cannot be faithfully implemented simply by comparing the sum total of all deferred payments proposed by the plan with the amount of the allowed secured claim. An appropriate discount factor must be arrived at by the court, so as to fairly discount value proposed to be given in the future on account of the allowed secured claim.

*The simplest method of equating the present value of deferred future payments with the amount of the allowed secured claim is to propose interest payments over and above the face amount of the allowed secured claim . . .* (Emphasis added)

Liens divide into three categories: judicial liens; security liens; and statutory liens. A lien is defined as a charge against or interest in property to secure payment of a debt or performance of an obligation. Tax liens are included in the definition of statutory liens.

■ Ratiocination seeking to differentiate between consensual liens and statutory liens by equating ordinary tax claims with liened tax claims is, in this Court's opinion, extreme reasoning. Moreover, altering the nature and scope of a valid lien premised upon vapid and tenuous distinctions contains vestiges of Draconian law palpably contra to the abundant case precedent adapted in the legislative objective contained in §§ 506 and 1325 of the Code. Thus, this Court dispositively finds that a tax lien has status equal to that of consensual or specific liens and where proceeds of the security subject to a tax lien is more than sufficient to pay principal and accrued interest, post-petition interest is deemed an integral part of the claim and is allowable.

At this juncture, the Court will allude to the evaluation facet of § 506(a). Debtors' petition reflects the residence fair market value at a scheduled value of $48,000 subject to a $28,000 mortgage. Of the remaining $20,000 equity, $15,000 is claimed as exempt, leaving $5,000 equity subject to the tax lien securing the IRS claim.

■ The *ad valorem* admission appearing in debtors' schedules is *prima facie* and binding. Constant therewith a formal valuation hearing is obviated.

The fourth segment of the issue at bar questions the validity of Rule 13–302, Rules of Bankruptcy Procedure, as relates to the late filing of a secured tax claim. In ancillary context, the time line by when secured creditors must file their claims is also examined.

Rule 13–302(e)(1) of the Rules of Bankruptcy Procedure provides in pertinent part:

(e) Time for Filing.

(1) Secured Claims. A secured claim, whether or not listed in the Chapter XIII Statement, must be filed before the conclusion of the first meeting of creditors in the Chapter XIII case unless the court, on application before the expiration of that time for and cause shown, shall grant a reasonable, fixed extension of time. Any claim not properly filed by the creditor within such time shall not be treated as a secured claim for *purposes of voting and distribution in the Chapter XIII case.* Notwithstanding the foregoing, the court may permit the later filing of a secured claim for the purpose of distribution by the debtor, the trustee, or a codebtor. (Emphasis added)

The above rule was amended in 1976 extending a creditor's time to file a proof of claim from the first meeting of creditors to the close of the first meeting of creditors in order to retain their secured position for purposes of voting and distribution.

■ It is axiomatic that the Rules of Bankruptcy Procedure remain applicable and relevant to cases filed under the Bankruptcy Code except in those instances where the rules are inconsistent or in conflict with the substantive provisions of the Code. 11 U.S.C. Title 4, § 405(d). *In re Osborne*, 1 C.B.C.2d 924 (S.D.Fla.1980).

In the instant case, IRS filed its proof of claim after the close of the meeting of

creditors. The meeting of creditors was closed on February 27, 1980, whereas IRS filed its proof of claim on March 4, 1980. Given these facts, the reach of Rule 13–302(e)(1) evolves as the key factor relative to whether IRS is to be treated as an unsecured creditor pursuant to the proviso of the rule.

■■■ Consonant with the reasoning following, this Court is persuaded that the constraint of Rule 13–302(e)(1) restricting secured creditors to file proofs of claim prior to the close of the meeting of creditors is inapt and inconsistent with the provisions of the Bankruptcy Code.

The policy underlying Rule 13–302(e)(1) as stated by the Advisory Committee is as follows:

Subdivision (e). Paragraph (1) of subdivision (e) requires generally that secured claims be filed on or before the first date set for the first creditors' meeting in the Chapter XIII case. Since the plan must be submitted to and accepted by creditors before it can be confirmed, an early determination of secured claims is essential to confirmation and the beginning of distribution to creditors under the plan.

. . .

See: Advisory Committee note, 15 Collier on Bankruptcy (14th Ed.) ¶ 13.302.01 at p. 13–302–6; *In re Tatum*, 1 BCD 1374 (M.D.Ga.1975).

Pursuant to the provisions of §§ 651 and 652 of the Bankruptcy Act, a Chapter XIII plan could not be confirmed unless all secured creditors dealt with by the plan accepted same. Accordingly, the determination of secured claims early in a Chapter XIII proceeding was essential to the Court's determination of whether a wage earner's plan should be confirmed. See: *In re Tatum*, supra. Under Chapter 13 of the Bankruptcy Code, acceptance by a secured creditor of the Chapter 13 plan is no longer an imperative or a condition precedent to confirmation of the plan. Therefore, the justification underlying the setting of a short bar date by when proofs of claim must be filed by holders of secured claims is not relevant in cases filed under Chapter 13 of the Bankruptcy Code.

A debtors' plan as it applies to secured creditors is governed by § 1325 providing that the plan shall be confirmed by the Court if any of the conditions following are met:

(1) the holder of the secured claim accepts the plan; or

(2) the debtor is to distribute under the plan the value as of the effective date of the plan to the holder of a secured claim property of a value that is not less than the allowed amount of the secured claim as determined under 11 U.S.C. § 506(a); or

(3) the debtor must surrender the property securing the claim to the secured creditor. H.R. 95–595 at 430, U.S.Code Cong. & Admin.News 1978, p. 5787.

Insofar as the need to file a proof of claim in a case commenced under the Bankruptcy Code is concerned, § 501 provides in relevant part:

(a) A creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest.

(b) If a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim.

(c) If a creditor does not timely file a proof of such creditor's claims, the debtor or the trustee may file a proof of such claim.

Although the legislative history indicates that § 501 is permissive only and requires the filing of a proof of claim if some purpose would be served by such filing (H.R. Rep. 95–595 at 351), the implicative context and thrust of § 501 places an onus upon the secured creditor to file a proof of claim in a Chapter 13 case in order to preserve and safeguard the secured status of its claim.

■■■ By way of specificity, if a secured creditor seeks to object to a confirmation of a Chapter 13 plan on the basis that the plan does not comply with the provisions of 11 U.S.C. § 1325(a)(5)(B)(ii), he must first file

a proof of claim and it then becomes incumbent upon the court to determine the secured status of the objecting creditor pursuant to the provisions of 11 U.S.C. § 506(a). See: H.R.Rep. 95–595 at 356.

 Prior to any determination of the value of the secured creditor's collateral under § 506(a), the secured claim must first be allowed. *In re Hotel Associates Inc.*, 3 B.R. 340, 6 BCD 145 (E.D.Pa.1980). The allowance of claims or interest is governed by § 502. Under the dictate of said section, a claim is deemed allowed only when a proof of claim is filed and no party in interest objects to the claim. The filing of a proof of claim is *prima facie* evidence of the claim's validity and amount. H.R.Rep. 95–595 at 352.

 If the secured creditor does not file a proof of claim, the Court has no subject matter basis for determining the secured status of the objecting creditor. Should the secured creditor fail to file a proof of claim prior to the confirmation of the plan, then, and in that event, the provisions of the plan become absolute and binding upon the secured creditor, whether or not such creditor has objected to, has accepted, or has refused the plan. 11 U.S.C. § 1327; H.R.Rep. 95–595 at 430.

 Concomitantly, should the debtor list a secured creditor's claim at a "cram down" value, objection to such value by the secured creditor is subject to initial demonstration that he has in fact an allowed secured claim. This can only be accomplished by the filing of a proof of claim. 11 U.S.C. § 502(a). Upon the creditor filing its claim, the burden shifts to the debtor or trustee or any party in interest to object to the value of the claim listed in the proof of claim to offset the *prima facie* connotation of the claim's validity and amount. *In re Hotel Associates Inc.*, supra.

 The Court's finding that Rule 13–302(e)(1) is inconsistent and inapposite to cases filed under Chapter 13 of the Bankruptcy Code engenders a void as to the appropriate time frame when a proof of claim must be filed by a secured creditor.

This Court opines that a secured creditor is mandated to file a proof of claim prior to the confirmation hearing, or be bound by the terms of the plan. See: § 1327, supra.

In a Chapter XIII case under the Bankruptcy Act, the Court, at the first meeting of creditors following the debtors' examination, would tally the votes of creditors and then commence a confirmation hearing. *In re William Musgrove*, 4 B.R. 322 (1980). Thus, pursuant to the procedural course of a Chapter XIII under the Bankruptcy Act, the setting of a bar date in comport with Rule 13–302(e)(1), was rooted in a valid and integral requisite.

Under the Bankruptcy Code, however, the scheme of a Chapter 13 proceeding has been altered from the statutory course appertaining under the Bankruptcy Act; e. g., in place of a "first meeting of creditors" the Code speaks of a "meeting of creditors". 11 U.S.C. § 341(a). The judge is barred from presiding or attending a meeting of creditors. 11 U.S.C. § 341(c). It is only after the meeting of creditors is concluded that the Court holds a confirmation hearing, at which time the treatment of secured creditors under the Chapter 13 plan is measured against requirements of 11 U.S.C. § 506(a) and § 1325(a)(5). *In re William Musgrove*, supra.

Rule 13–213, Rules of Bankruptcy Procedure, gives supportive validation to the Court's conclusion. In connection therewith, this Court finds that said rule is consistent and compatible with the standards of confirmation prescribed by 11 U.S.C. § 1325, whereas Rule 13–302(e) is not.

In light of the foregoing, rigid adherence to the Rule 13–302(e)(1) bar date as it pertains to the filing of secured claims, patently unrelated to the date of the confirmation hearing, would result in a procedure that is not rationally related to the statutory thrust and purpose behind the need of a secured creditor to file a proof of claim.

Constant with the above, this Court concludes that a secured creditor file a proof of claim prior to the confirmation hearing in lieu of before the close of the meeting of creditors.

Assuming arguendo that Rule 13–302(e)(1) is deemed consistent with Chapter 13 of the Bankruptcy Code, the rule nonetheless does not apply in the case at bar, by virtue of the fact that the tax lien held by the IRS is secured by an interest in real property consisting of the debtors' principal residence.

Under the provisions of the Bankruptcy Act, a claim secured by estates in real property were not claims for purposes of Chapter XIII and thus could not be dealt with by a wage earner's plan. See: §§ 606(1), (4), and 646(2). Since an estate in real property was not affected by a Chapter XIII plan, Rule 13–302(e)(1) did not apply to secured creditors whose claims were secured by real property. See: Advisory Committee Note, 15 Collier on Bankruptcy (14th Ed.) ¶ 13–302.01 at p. 13–302.7.

Section 1322(b)(2) of the Bankruptcy Code derives from § 646(2) of the Bankruptcy Act. It provides in relevant part:

(b) Subject to subsections (a) and (c) of this section, the plan may

．　　　．　　　．　　　．　　　．

(2) modify the rights of holders of secured claims *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims; ． ． (Emphasis added)

Explicitly, § 1322(b)(2) is not limited to real estate mortgages only, but rather deals with any security interest in the debtors' principal residence. See: 124 Cong.Rec.H. 11,106 (September 28, 1978).

Having resolved the question of value in consonance with the finding that the tax lien is secured by the debtors' principal residence makes Rule 13–302(e)(1) nonapplicable in the instant case even if it were to be assumed that the rule is consistent with the provisions of Chapter 13 of the Code.

The final segment of the issue addresses allowability of interest on secured claims.

11 U.S.C. § 1325(a)(5)(B) provides in relevant part:

(a) The court shall confirm a plan if

．　　　．　　　．　　　．　　　．

(5) with respect to each allowed secured claim provided for by the plan—

．　　　．　　　．　　　．　　　．

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

．　　　．　　　．　　　．

The courts have held that a plan complies with the requirements of 11 U.S.C. § 1325(a)(5)(B)(ii) if it provides that the secured creditor will receive the present value of his allowed claim which takes into account the discount of money to be received in the future. Where, as here, the secured creditor is to be paid in installments over time, it is entitled to a percentile interest factor, to protect the creditor from loss caused by its being paid over a period of time. See: *In re Lum,* 1 B.R. 186 (E.D. Tenn.1979); *In re Ziegler,* —— B.R. ——, 1 CBC 2d 874 (S.D.Ohio 1980); *In re Crockett,* 3 B.R. 365, CCH ¶ 67,406 (N.D.Ill.1980).

Having established the tax claim of the IRS is a perfected secured claim to be paid in installments over a period of thirty-six (36) months, it follows the IRS is entitled to post-petition interest for such term on its secured claim.

With reference to determining the appropriate rate of interest on a secured claim, the courts have endorsed two methods of calculating such interest, *viz.*: (1) the current legal rate of interest allowable by state law, See: *In re Crockett,* supra; and (2) the rate of interest on tax liabilities fixed by 26 U.S.C. § 6621, See: *In re Ziegler,* supra.

The Court adopts the statutory implementation embodied in 26 U.S.C. § 6621 as compatible with a fair and reasonable value component of the IRS claim. *In re Ziegler,* supra.

*Conclusion :*

Premised upon the foregoing findings and precepts of law, expounded and by vir-

tue of the fact that the debtors' amended Chapter 13 plan does not: (1) provide that the IRS retains its lien securing the tax claim; or (2) provide a rate of interest to be paid on the secured claim during the payout period, the Court dispositively concludes that the amended plan does not comply with the legal requirements of 11 U.S.C. § 1325(a)(5)(B).

Accordingly, the conditional order of confirmation dated March 17, 1980, is hereby vacated without prejudice to the debtor filing a second amended plan in conformity with the dictate of this decision and the requirements of § 1325(a)(5)(B)(ii).